*MURRAY and WINTER *against* LYLBURN, ISHAM, SPRAGUE, and DAVIS.

Where a trustee, *pending a suit* against him, for a breach of trust, fraudulently sells the trust estate, and assigns the securities taken for the purchase money, the *cestui que trust* may either take the land, or disregard the sale, and take the bond and mortgage, or other securities assigned. He cannot have both, but must make his election:

Whether the *cestui que trust*, in such case, could take *money, negotiable paper*, or movable and personal property, the proceeds of the trust estate, and fraudulently disposed of by the trustee ? *Quære.*

The assignee of a *chose in action*, takes its subject to all the equity of the original obligor or debtor, at the time, and not to a *latent* equity residing in a third person against the obligee or assignor.

A purchase, *pendente lite*, of the subject matter of controversy, does not vary or affect the rights of the parties to the suit.

But where the purchaser or assignee of the securities had no *actual* notice of the suit, *costs* were not decreed against him.

IN 1809, a bill was filed against *Winter*, who held certain lands in *Cosby's* manor, in trust for *P. Heatly* and others, in behalf of the *cestui que trusts*, charging him with a fraudulent breach of trust, and an *injunction* was issued against him, in *February*, 1810, enjoining from acting as trustee, and from selling any of the trust estate, or assigning the securities or proceeds thereof, &c. (*Vide* vol. 1. p. 26. 60. 77. 566.) *Winter*, notwithstanding, sold a lot of land, part of the trust estate, in *August*, 1810, to the defendant *Sprague*, in fee, and took his bond and mortgage for the purchase money. *Winter*, afterwards, assigned the bond and mortgage to *Robert Lylburn*, deceased, whose *executors*, *Lylburn* and *Isham*, were made defendants. Since the assignment, about 180 dollars, part of the money, had been paid to *Winter*. *Sprague*, afterwards, in 1814, released all his interest in the land so purchased by him, to *Davis*, who is in possession thereof.

*The defendants *Lylburn* and *Isham* denied all knowledge of the sale of the land to *Sprague*, or of the trust; and, according to their knowledge and belief, all notice to their testator, of the suit against *Winter*, and of the injunction; and they averred that he took the assignment of the bond and mortgage, *bona fide*, for a valuable consideration.

The bill was taken *pro confesso*, against *Sprague* and *Davis*.

*Gold*, for the plaintiffs.

*Ely*, for the defendants.

*May* 15th

[ *442 ]

1817.

MURRAY
v.
LYLBURN.

Where a trustee, pending a suit against the *cestui que trust,* for a breach of trust, fraudulently sells the trust estate, the *cestui que trust* may either disregard the sale, and take the land, or he may affirm the sale, and take the bond and mortgage, or other securities given for the purchase money. He cannot have both.

[ * 443 ]

THE CHANCELLOR. The question is, whether the executors of *Lylburn* are to be held accountable to the *cestui que trusts* (in whose behalf *Murray,* as receiver, instituted the suit) for the bond and mortgage, in like manner as *Winter* may be, or would have been, had he not assigned them.

The case states, that the bill has been taken *pro confesso* against *Sprague,* the purchaser, and against *Davis,* who holds under him. It also states, that *Davis* is in possession.

The *cestui'que trusts* are not entitled to the land, and also to the purchase money. The two claims, as I observed in the analogous case of *Murray* v. *Ballou* and *Hunt,* (1 *Johns. Ch. Rep.* 581.) are inconsistent with each other. The one sets aside, and the other affirms the sale. If the *cestui que trusts* choose to disregard the alienation made by the trustee, pending the suit against him, (as they may do, according to the settled doctrines of the Court,) then they have nothing to do with these securities, but are to look solely to the land, taking no notice of the alienation by *Winter.* They ought to be put to their election. I am inclined to think they may, if they please, affirm the sale, *and look to these securities; and if they do, then the bill, as against *Sprague* and *Davis,* ought to be dismissed.

The assignee of a *chose in action* takes it, subject to all the equity of the original obligor or debtor, at the time of the assignment; but not to a *latent* equity in a third person against the assignor.

It is a general and well-settled principle, that the assignee of a *chose in action* takes it subject to the same equity it was subject to in the hands of the assignor. (2 *Vern.* 691. 764. 1 *P. Wms.* 496. 1 *Ves.* 123. 4 *Vesey, jun.* 21.) But this rule is generally understood to mean the equity residing in the original obligor or debtor, and not an equity residing in some third person against the assignor. He takes it *subject to all the equity of the obligor,* say the judges in the very elaborately argued case of *Norton* v. *Rose,* (2 *Wash. Rep.* 233. 254.) on this very point, touching the rights of the assignee of a bond. The assignee can always go to the debtor, and ascertain what claims he may have against the bond, or other *chose in action,* which he is about purchasing from the obligee; but he may not be able, with the utmost diligence, to ascertain the latent equity of some third person against the obligee. He has not any object to which he can direct his inquiries ; and, for this reason, the claim of the assignee, without notice of a *chose* in action, was preferred, in the late case of *Redfearn* v. *Ferrier* and *others,* (1 *Dow. Rep.* 50.) to that of a third party setting up a secret equity against the assignor. Lord *Eldon* observed, in that case, that if it were not to be so, no assignments could ever be taken with safety. I am not aware that this decision was the introduction of any new principle, in the case of actual *bona fide* purchases or assignments *by contract;* though Lord *Thurlow* said, in one *case,* (1 *Vesey, jun.* 249.) that the purchaser of

à *chose in action* must abide by the case of the person from whom he buys ; but he spoke this on a question between the assignee and the debtor. In assignments, by *operation of law*, as to assignees of bankrupts, the case may be different ; for such assignments are said to pass the rights of the bankrupt, subject to all equities, and precisely in the same plight and condition as he possessed them. (1 *Atk.* 162. 9 *Vesey*, *100.) The ground, however, on which I place the right of the *cestui que trusts*, in this case, to pursué the bond and mortgage in the hands of the assignee of *Winter*, is the constructive notice to all the world, arising from the bill and supplementary bill, filed in 1809, against *Winter*, for a breach of trust. The object of that suit was to take the whole subject of the trust out of his hands, together with all the papers and securities relating thereto. If *Winter* had held a number of mortgages, and other securities, in trust, when the suit was commenced, it cannot be pretended, that he might safely defeat the object of the suit, and elude the justice of the Court, by selling these securities. If he possessed cash, as the proceeds of the trust estate, or negotiable paper not due, or perhaps movable personal property, such as horses, cattle, grain, &c., I am not prepared to say the rule is to be carried so far as to effect such sales. The safety of commercial dealing would require a limitation of the rule ; but bonds and mortgages are not the subject of ordinary commerce ; and they formed one of the *specific* subjects of the suit against *Winter*, and the injunction prohibited the sale and assignment of them as well as of the lands held in trust. If the trustee, pending the suit, changed the land into personal security, as he did in this case, I see no good reason why the *cestui que trusts* should not be at liberty to affirm the sale, and take the security ; and whoever, afterwards, purchased it, was chargeable with notice of the suit. He was dealing with a subject out of the ordinary course of traffic, and always understood to be subject to certain equities ; and there can be very little ground for the complaint of hardship in the application to such a case, of the general doctrine of the Court. There is no principle better established, nor one founded on more indispensable necessity, than that the purchase of the subject matter in controversy, *pendente lite*, does not vary the rights of the parties in that suit, who are not to receive any prejudice from the alienation. *The latent equity here might easily have been discovered by *Lylburn*, when he purchased, by applying to the records of this Court. If the *cestui que trust* be entitled, as between him and his trustee, to take the securities or the land, at his election, it ought not to be in the power of the trustee to defeat that election, by selling the securities. The liti-

Whether the *cestui que trust* could take money, negotiable paper, or movable personal property, the proceeds of the trust estate, fraudulently disposed of by the trustee ? *Quære.*

A purchase, *pendente lite*, of the subject matter of controversy, does not vary or affect the rights of the parties to the suit.

[ * 445 ]

1817.

MURRAY
v.
LYLBURN.

gating parties are not to have their rights affected by any alienation during the pendency of the suit.

This doctrine was fully considered, and the authorities reviewed, in the case of *Murray* v. *Ballou*, (1 *Johns. Ch. Rep.* 566.) and I do not know that it is in my power to add any thing material to what was there said. That case must be considered as the established law in this Court. If it were necessary to give further proof of the uncontradicted existence and uniform support of the rule, I might refer to the ancient rule at law, (*Jackson* v. *Ketchum*, 8 *Johns. Rep.* 479.) that a purchase of land, pending a suit concerning it, was champerty. It was also the maxim of the common law that *pendente lite nihil innovetur*. In the recent case of *Metcalf* v. *Pulvertoft*, (2 *Ves. & Beame*, 200.) the *English* vice chancellor reviewed the cases, and vindicated this doctrine. So, in the case of *Gaskell* v. *Durdin*, (2 *Ball & Beatty*, 167.) the present lord chancellor of *Ireland* declared the rule, in the following clear and emphatical language : " The rule of this Court undoubtedly is, that any interest acquired *in the subject matter of a suit*, pending the suit, is so far considered as a nullity, that it cannot avail against the plaintiff's title ; and if this rule were not attended to, there would be no end to any suit ; the justice of this Court would be evaded, and great hardship and inconvenience to the suitor necessarily introduced. It is extremely difficult to draw any line, and *very dangerous to allow of the rule being frittered away by exceptions.*"

I shall, accordingly, decree, that the plaintiffs, by their solicitor, signify, by an election in writing, signed by such *solicitor, and filed in the register's office, their determination whether to proceed against the defendants *Sprague* and *Davis* for the land, or against the defendants *Lylburn* and *Isham* for the bond and mortgage mentioned in the pleadings. That if such election be to proceed against the defendants *Sprague* and *Davis*, then the bill, as against the defendants *Lylburn* and *Isham* shall, from the time of filing such writing, stand dismissed ; and the defendants *S.* and *D.* shall, within thirty days, convey the lot in the pleadings mentioned to the present trustees, &c., and pay the costs of the suit against them ; but that if such election be to proceed against the defendants *Lylburn* and *Isham*, then the bill, as against the defendants *Sprague* and *Davis*, shall, from the time of filing such writing, stand dismissed, and the said defendants *Lylburn* and *Isham* shall, within thirty days from the service of a copy of this decree, and of such election, at their own expense, reassign and deliver to the said solicitor, or his order, for the use of the *cestui que trusts*, for whose benefit this suit was instituted, the said bond and

[ * 446 ]

mortgage, together with all the right and interest of their testator, at the time of his death, therein, and shall also pay the sum of 157 dollars and five cents, which they have admitted, by their answer, to have been received by their testator, on the bond and mortgage, subsequent to the assignment thereof, together with lawful interest thereon, from the 30th of *November*, 1811, when it was received; and that if the plaintiffs shall not make and file their election, as aforesaid, within forty days from the date of this decree, then the bill, as to all the defendants, shall be dismissed.

As to the question of costs, I have not charged the executors with costs, because there is no evidence that their testator purchased the securities under any other than constructive notice of the suit against *Winter;* and actual notice is denied. The case, therefore, falls within the decision in *Murray* v. *Ballou.* But *Sprague* and *Davis* are *made chargeable, in one event, with costs, because they are charged with notice, in fact, of the suit and injunction, and they have admitted it, by suffering the bill to be taken *pro confesso.* And in the cases in which the bill is to be dismissed, there having existed a just cause of suit, which is lost only in consequence of an election, or a default founded upon the direction in the decree, the defendants, even then, will have no equity to entitle them to the costs of the suit, and the dismissal is to them a favor.

Decree accordingly.

N. B. In the suit by the *same plaintiffs against Lylburn, Isham* and *Shepherd,* a similar decree was entered, except in regard to *Shepherd,* who, not being charged with *actual* notice of the *pendency of the suit* against *Winter,* was not decreed to pay costs.

In the suit, also, by *the same plaintiffs,* against *Hardenbrook* and *Roma,* on a similar case, there was the like decree as to *Hardenbrook,* the assignee; but as to the defendant *Roma,* who purchased *before* the suit brought against *Winter,* the chancellor held that his title was not affected by it, and dismissed the bill as to him, unconditionally, and with costs.

Margin notes:

1817.

MURRAY
v.
LYLBURN.

But where the purchaser, or the assignee of the securities, had no *actual* notice of the pendency of the