## Faull *et al. versus* Tinsman.

The equitable assignee of a chose in action, takes it subject to all the equities existing between the original parties, unless he has made inquiry of the debtor, and the latter, by his conduct, has estopped himself from setting up the defence. The only effect of the Act of 28th May 1715, is to enable the assignee to sue in his own name.

ERROR to the Common Pleas of *Fayette county*.

This was an action of *assumpsit* by Samuel Tinsman, for the use of Isaac Bailey, against Thomas Faull, Sr., Thomas Faull, Jr., and William L. Faull, upon a promissory note of which the following is a copy:—

"$700.                              Bridgeport, April 17, 1856.

"Twelve months after date, we, or either of us, promise to pay to Samuel Tinsman, the sum of seven hundred dollars, for value received, less fifty-five dollars, in the event that the said Tinsman fails to deliver a certain fan attached to Reading's Patent Corn Sheller, within one month from date, as sold to us and John S. Krepps.

"THOS. FAULL, SR.
"THOS. FAULL, JR.
"WM. L. FAULL.

Endorsed—"Brownsville, June 26th 1856. For value received, I assign the within note to Isaac Bailey.

"SAMUEL TINSMAN.

"Attest—GEO. MORRISON."

The fan mentioned in the note was shown to have been delivered. There was no evidence of any inquiry having been made by the assignee, of the defendants, previously to his purchase of the note.

Payment was resisted by the defendants upon the ground of an alleged agreement by Tinsman, at the time the note was given, that they should not be required to pay it, when due, unless they had then made the money out of the machine which was the consideration for it; that they were to have time to pay, until they could make the money out of sales; and that, after large expenditures and diligent efforts, they could not sell the machine at all; for many reasons, but chiefly because of its requiring too much power to run, and its not being adapted to the wants and business of the territory sold.

[Faull *et al. v.* Tinsman.]

The court below charged the jury, *inter alia*, that this defence was not available as against Bailey, "a purchaser for a valuable consideration; that the agreement was inconsistent with the legal import of the instrument, and the assignee had nothing to do with it:" 9 *S. & R.* 141:

To this instruction the defendants excepted; and a verdict and judgment having been rendered for the plaintiff, they removed the cause to this court, and here assigned the same for error.

*Kaine* and *Veech*, for the plaintiffs in error.

*Howells* and *Ewing*, for the defendant in error.

The opinion of the court was delivered by

READ, J.—A chose in action is not assignable at law, but is in equity. A suit, therefore, at common law, must be in the name of the assignor, although prosecuted for the use and benefit of the assignee. The effect of this rule is, that the assignee takes the chose in action, subject to all the equities existing between the original parties, and stands in exactly the same position to the debtor, that the original creditors and assignors did at the time of the transfer. He can rise no higher than this, if there has been no communication between him and the debtors.

The rule, therefore, under these circumstances, is the same, both in law and equity, and it is most fully explained by Lord ST. LEONARDS, in Mangles *v.* Dixon, 3 *House of Lords Cases* 703. "If there is one rule," says he, (page 731,) "more perfectly established in a court of equity than another, it is, that whoever takes an assignment of a chose in action, (which this charter-party was, for it is not assignable at law, although it is in equity,) takes it, subject to all the equities of the person who made the assignment. No barrister would presume to deny in any court of equity, that, at the time that assignment was taken, and down to the time when the notice was given, during all these months, the bankers took precisely the same interest, and were subject to the same liabilities, namely, to No. 2 and No. 3, as were the Messrs. Boyds themselves." "The authorities upon this subject, as to liabilities, show, that if a man does take an assignment of a chose in action, he must take his chance as to the exact position in which the party giving it stands:" *Id.* 735; and Lord ST. LEONARDS then proceeds to examine and discuss the cases of Cator *v.* Burke, 1 *Bro. Chan. Cas.* 434; Turton *v.* Benson, 1 *P. Wms.* 496; 2 *Vernon* 764; Matthews *v.* Wallwyn, 4 *Ves.* 118; and Chambers *v.* Goldwin, 9 *Ves.* 264.

The same doctrine is distinctly recognised in The Official Manager of The Life Insurance Society *v.* Pooly, 5 *Jurist, N. S.* 129, by the Lords Justices, affirming a decision of V. C. STUART, reported

[Faull *et al. v.* Tinsman.]

4 *Jurist, N. S.* 371. Lord Justice KNIGHT BRUCE says, (p. 131):
"Unfortunately, however, he has bought what the English law
calls a chose in action; and it is too clearly settled to admit of
question or argument, that a person buying a chose in action,
which can only be put in suit in the name of the original holder,
from whom he buys, must abide the case of the person from whom
he buys, in whose name it must be put in suit at law." Upon the
question whether the assignees of the debentures which had been
fraudulently issued, was in a better condition than the assignor,
Lord Justice TURNER said, (p. 133): "*Primâ facie*, he certainly
cannot be so, because I take no principle to be better settled, than
the ordinary principle of this court, that the assignee of a chose
in action must take subject to all the equities which affect the
assignor. Mr. Craig has attempted to draw a distinction between
those cases, and says that it depends, in a court of equity, upon
the question, whether inquiry has been, or ought to have been
made or not. I cannot find any authority in which any such
principle has been laid down." Chancellor KENT laid down the
same doctrine, in the most explicit terms, in the well-considered
cases of Murray *v.* Lylburn, 2 *Johns. Ch.* 441, and Livingston
*v.* Dean, *Id.* 479.

The Act of the 28th of May 1715, 1 *Smith* 90, applies only to
such instruments as can be assigned so as to allow the assignee to
sue in his own name, and all such assignments of bonds and spe-
cialties must be under hand and seal, before two or more credible
witnesses. This was so in the earliest case of Wheeler, assignee
of Baynton, *v.* Hughes, 1 *Dallas* 23; and also in Davis, assignee
of Morrison, *v.* Barr, 9 *S. & R.* 137. Frantz, for the use of Gar-
berich, *v.* Brown, 1 *Penn. R.* 257, was not really governed by the
act, for the assignment was only an equitable one, and the suit was
necessarily brought in the name of the assignor, although Chief
Justice GIBSON seems to think it necessary to give a larger con-
struction to the Act of 1715, than was adopted in Davis *v.* Barr.
The Chief Justice there says: "But the assignee is bound to take
notice of everything, as well a secret trust, as want of considera-
tion or set-off, which may affect the existence of the debt between
the original parties, unless the obligor, after inquiry made, has
withheld the requisite information. What would have been the
answer to the proper inquiry here? Certainly not, that the bonds
were payable at all events, but that the obligee held them subject
to an agreement" (by parol), "to indemnify the obligor for what-
ever he should be compelled to pay for the obligee." In Mott *v.*
Clark, 9 *Barr* 404, Judge ROGERS expressly approves the whole
doctrine, as laid down by Chancellor KENT in the two cases already
cited, and applied it to the case before him, excluding only the
latent equity of a third person.

In the case before us, the note was not negotiable, and the

[Faull *et al. v.* Tinsman.]

assignment was only an equitable one, and the suit was in the name of the payee for the use of his assignee. The first question, therefore, was, what was the equity between the original parties, and if the payee could not recover against the maker, neither could the assignee, although he might have paid a valuable consideration for it. In this there is no hardship, for all that he had to do was to make inquiry of the maker before taking the assignment, and then he would have acted as Mr. Krepps did, refuse to buy it until he could see the Faulls, and if they were willing then he would take it.

The same defence that would have availed the maker, in a suit by the payee, was available in the present suit, brought by the assignee in the name of the payee; and the court, therefore, erred in not so charging the jury, and in not submitting the case to them in that aspect, with proper instructions, as to the parol contemporaneous agreement between the original parties.

Judgment reversed, and a *venire de novo* awarded.