## ELIJAH P. GREENE *v.* HENRY DEAL, APPELLANT, AND OTHERS.

*Mortgage — equities between mortgagees — how far subsequent purchaser bound by — Recording act.*

Two mortgages bearing even date were given respectively to A and B, with the understanding that they were to be equal liens upon the real estate described in them. B's mortgage was first recorded. Subsequently, but after A's mortgage was recorded, B assigned his mortgage to C, and C thereafter assigned it to D; both C and D being ignorant of the understanding that the mortgages were to be equal liens upon the premises. *Held*, that D, being a purchaser in good faith and for a valuable consideration, might avail himself of the earlier recording of his mortgage, and that it was a prior lien to that of A.

Two bonds and mortgages of the same date were executed upon the same property for the purchase-money. One was given to Henry Deal, the other to Mary C. Greene, and each was expressed to be for a part of the purchase-money of the premises. It was intended by the parties that the mortgages should be equal as to priority. They were recorded on the same day; but the former was recorded at a later time than the latter. The mortgagee in the latter mortgage, Mary C. Greene, subsequently, but after the recording of the former mortgage, assigned her mortgage to Elijah P. Greene, and he subsequently assigned it to John K. Warnick. Warnick and Greene were each *bona fide* purchasers, without notice of the agreement that the lien of the mortgages was to be equal as to priority.

A prior mortgage had been foreclosed, and there was a surplus. Warnick claimed a priority in respect to that surplus, and Deal claimed that the two mortgages should share equally. The referee and the Special Term sustained Warnick's claim, and Deal appeals.

*M. L. Stover*, for the claimant Warnick. The claimant Warnick, being a *bona fide* purchaser of the mortgage to Mary C. Greene, and having no notice of any of the circumstances to defeat the apparent preference of that mortgage, is entitled to protection. (*Corning* v. *Murray*, 3 Barb., 652.) It is well settled that if one affected with notice convey to another without notice, the latter is as much protected as if no notice had ever existed. (*Jackson* v.

*Van Valkenburg,* 8 Cow., 264; *Jackson* v. *Given,* 8 Johns., 137; *Varick* v. *Briggs,* 6 Paige, 323; *Corning* v. *Murray,* 3 Barb., 652; *Webster* v. *Van Steenburg,* 46 id., 212.)

*Z. S. Westbrook,* for the appellant. The recording acts did not apply, and neither could gain priority by having his or her mortgage first recorded. (*Jones* v. *Phelps,* 2 Barb. Ch., 440; *Fort* v. *Burch,* 5 Denio, 184.) And this even if the Greene mortgage was recorded first. (*Fort* v. *Burch,* 5 Denio, 187; *Jackson* v. *Post,* 15 Wend., 25; *Van Rensselaer* v. *Clark,* 17 id., 25.) Deal's mortgage was on record when they took their assignments, showing upon its face that it was equal with the other. And no presumption could arise from the record that one mortgage had priority over the other. And if any presumption arises from the record it must be that the two mortgages stand equal. Hence, these assignees are chargeable with direct notice that the two mortgages stood equal, or they were at least bound as men of ordinary prudence to inquire and ascertain the condition of the two mortgages as to their equality. (4 Kent, 179; *Williamson* v. *Brown,* 15 N. Y., 354; *Tuttle* v. *Jackson,* 6 Wend., 226.) Whatever is sufficient to put upon inquiry is equivalent to actual notice.

LEARNED, P. J.:

The question in this case is whether a purchaser in good faith, without notice and for a valuable consideration, of a recorded mortgage, is bound by a verbal agreement between the mortgagee therein and the mortgagee in another mortgage recorded at a later date, on the same premises, that the two should be equal in priority; such agreement having been made at the time of the execution of the mortgages. There was nothing in the mortgage itself, held by Warnick, to give him notice that there was another mortgage on the same premises, of equal priority. The fact that it was described as a purchase-money mortgage, gave no such notice. Even if he had known that there was another purchase-money mortgage, it would not follow that it was intended that the two should be equal in priority. Two purchase-money mortgages of the same premises are some times given, of which one is intended to be the prior lien.

The question then arises as to the effect of the recording act.

Mortgages are conveyances under that act. (1 R. S., [m. p.] 762, § 70 [38].) When Warnick, therefore, bought the mortgage of Greene, he would look to see whether Greene had previously assigned it, and whether it had been assigned to Greene. Finding, as he would, an assignment to Greene from Mary C. Greene, the original mortgagee, he would examine whether she had previously assigned the mortgage. If she had not, then he would examine whether there was any incumbrance recorded prior to the recording of this mortgage; and if there were none on record, he would be entitled, having no actual notice of any prior incumbrance, to assume that none existed which could affect him. (1 R. S., [m. p.] 756, § 1.)

This matter was expressly decided in *Corning* v. *Murray* (3 Barb., 652), a case almost identical with the present. And it is pointed out in that case, that the matter in dispute is not " within the rule that an assignee of a chose in action takes it subject to the equities existing against it in the hands of the assignor. The only application that has ever been made of this rule, is, that the *original debtor* can make the same defense against the assignee that he could have made against the assignor." (See *Murray* v. *Lylburn*, 2 Johns. Ch., 441, for the reason of this distinction.)

The case of *Jackson* v. *Post* (15 Wend., 5.88), is explained in *Hooker* v. *Pierce* (2 Hill, 650). It is there said that " the registry of the grantor's deed inures, in the nature of things, to the benefit of all those who claim under him. They become entitled to use all his habiliments of title as their own. His registry is theirs." That is to say, in the present case, Warnick is entitled to the benefit of the recording of the mortgage by Mary C. Greene. Her recording is his. By this construction only, can proper effect be given to section 1, above cited. (See *Crofut* v. *Wood*, 10 S. C. [3 Hun], 571.)

It cannot be that a *bona fide* purchaser, finding the chain of title clear of incumbrances while it was in the successive persons through whom he claims, is required to examine the records for subsequently recorded incumbrances. It is true that the language of the statute is, that the unrecorded conveyance shall be void against any subsequent purchaser in good faith and for a valuable consideration, " whose conveyance shall be first duly recorded."

But I think that the words, "whose conveyance," must be construed to include the conveyances of his grantors, mediate, and immediate. Their recording inures to his benefit; and, with his good faith, gives him a title indefeasible by the unrecorded deed. The evil of a contrary construction (as claimed by the appellant) may be shown by an illustration. Suppose A conveys to B, and subsequently the same land to C, who has knowledge of B's deed. C records his deed and conveys to D, who buys in good faith. Subsequently to the conveyance to D, B records his deed. Now, as to D, it is plain that B's deed is void. But if, by subsequently recording it, B can charge purchasers from D with knowledge of it, then D is prevented from selling his land, and its value is taken away without his fault. I think that this cannot be, but that the purchaser from D is entitled to the benefit of the prior recording of D's deed.

So, in the present case, Warnick is entitled to the benefit of the prior recording of Mary C. Greene's mortgage. He is not affected by the fact that another mortgage was subsequently recorded, although such record was made before he took the assignment to himself.

To state the principle in brief, the purchaser in good faith and for a valuable consideration, may avail himself of a prior recording by his grantor.

The order appealed from should be affirmed.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

Order affirmed, with ten dollars costs and printing expenses.

NOTE. — The case of the *Trustees of Union College* v. *Wheeler and others*, recently decided in the Commission of Appeals (not yet reported), appears to be in conflict with the statement contained in the opinion, that the rule, that an assignee of a chose in action takes it subject to the equities existing against it in the hands of the assignor, is applicable only to equities existing between the *original debtor* and the assignor. The facts of that case, so far as they bear upon this point, were, that prior to 1828, A, B and C were jointly interested in the purchase of certain lands, the title to which was taken in the name of A. A, with the assent of the other parties, sold certain of the lands, giving contracts of sale thereof to the purchasers. The title to two undivided thirds of this land, including the lands thus contracted to be sold, afterward passed to B, who executed to C a mortgage thereon cover-

ing both the lands contracted to be sold and those unsold, for the foreclosure of which the action was brought by D, a *bona fide* purchaser thereof from C for value, without notice of the existence of the contracts of sale. D did not put on record his assignment for several years after its delivery to him, and during this time, C, assuming to be the owner of the mortgage, executed releases from the lien thereof of a portion of the mortgaged premises which had not been contracted to be sold, and the. value of which exceeded the amount due on the mortgage.

In the foreclosure suit, the parties holding contracts of sale claimed that their lands were not liable to sale under the mortgage, by reason of the release of lands primarily liable and equal in value to the amount due on the mortgage, and that the equities which they were entitled to set up as against C, who had taken the mortgage knowing (constructively at least) of such contracts, were equally available against D, his assignee, though a purchaser in good faith without knowledge of their existence.

The referee dismissed the complaint as to the defendants who had contracts of sale. The General Term affirmed the judgment entered on the report of the referee, so far as it related to lands of which the purchasers had, *before the mortgage was given,* actually entered into possession, and reversed it as to those who had not entered into such actual possession, holding (59 Barb., 585; S. C., 5 Lans., 160) that the plaintiff was chargeable with constructive notice of the interests which the purchasers in actual possession of the lands held by them had therein, and on that ground held that their lands were not subject to the lien of the mortgage.

The Commission of Appeals, while affirming this proposition, did not assent to the further view expressed by the court below, that the plaintiff, being a *bona fide* purchaser, was not chargeable with the notice that C had of the rights and equities of the contract purchasers; and DWIGHT, C., in his opinion, says: "It is well settled that an assignee of a mortgage must take it subject to the equities attending the *original transaction.* If the mortgagee cannot himself enforce it, the assignee has no greater rights." Again he says: "A considerable number of authorities are cited by the plaintiff, as tending to show that the assignee of a chose in action is only subject to the equities between the creditor (assignor) and the debtor, and not to the so-called equities of third persons; such cases, as *James* v. *More* (2 Cowen, 298) and others of the same class, were reviewed as to their principle, or specifically, in *Bush* v. *Lathrop* (22 N. Y., 535), and repudiated."

These views, though their expression may not have been necessary to the decision in this case, and may be regarded as *obiter dicta,* appear to be in harmony with those of the present Court of Appeals, as laid down in the case of *Schafer* v. *Reilly* (50 N. Y., 67), in which it was held that a mortgage, executed to an agent of the mortgagor for the purpose of being negotiated, recorded and subsequently negotiated, but before the assignment and delivery of which to the assignee another person acquired a mechanic's lien upon the mortgaged premises, was a charge upon the premises subordinate to the mechanic's lien, and that this was so, notwithstanding the assignee, before taking the assignment, acquired and obtained from the mortgagor an affidavit that the mortgagee advanced the whole

sum of principal secured by the mortgage without abatement, and that there was no offset, defense or counter-claim thereto.   Judge ALLEN says in his opinion : "Eminent judges have pronounced in favor of a rule which would only subject the purchaser of choses in action to the equities of the debtors, and which would give them rights as they apparently exist against third persons, but these views have not prevailed."   The doctrine laid down in *Schafer* v. *Reilly*, which was decided upon the authority of *Bush* v. *Lathrop* (22 N. Y., 535), has been so far qualified by the Court of Appeals, as that a *bona fide* purchaser of a chose in action, not negotiable, from one to whom the owner has transferred the apparent absolute ownership, and who takes upon the faith of such ownership, obtains a valid title as against such owner, although his vendor had not such title. (*Moore* v. *Metropolitan Nat. Bank*, 55 N. Y., 45, 46.)   This qualification, however, rests upon the doctrine of estoppel, which is not applicable to the present case.

In the case of *Hooker* v. *Pierce* (2 Hill, 650), cited by the court in the present case, the existence of a different state of facts is said to distinguish it from the decision of the case of *Fort* v. *Burch* (5 Denio, 187), which holds that if a junior mortgagee, with notice, assign to one who has no notice, the assignee is entitled to the preference, provided he record his assignment before the prior mortgage is recorded, but that if he omits to record the assignment, his want of notice will not avail, and from the cases of *Jackson* v. *Post* (15 Wend., 588); *Van Rensselaer* v. *Clark* (17 id., 25); *King* v. *Richardson* (3 Keyes, 450); *Goelet* v. *McManus* (1 Hun, 306), holding substantially the same doctrine in regard to the effect of the record of a prior deed recorded subsequently to one taken with notice thereof, and before the taking of a conveyance from the grantee thus affected by notice; the case of *Hooker* v. *Pierce* holding that, while in accordance with the principle laid down in *Jackson* v. *Post* and the cases which have followed it, a *subsequent* purchaser is bound to notice *prior* conveyances, yet, that, in that case (*Hooker* v. *Pierce*), the facts did not justify the application of that principle, as the title which was there attempted to be established against the *subsequent* purchaser, was not acquired through a *prior* conveyance.

In the present case it may also be said that, as both mortgages were given at the same time, neither can be said to be subsequent to the other, and therefore the provisions of the recording act did not apply to Deal's mortgage, as they would have done under the decision of *Jackson* v. *Post*, had it been prior, and not of the same date and time of delivery as that of Warnick, the rule laid down in *Hooker* v. *Pierce* (2 Hill, 654) only requiring "purchasers to search for registries *subsequent* to their own in order to detect *prior* conveyances," though this construction does not appear to be justified by the words of the recording act.

The views expressed in the opinion in the present case appear, however, to go much further than this, and to be, to a great extent, subversive of the principles laid down in *Jackson* v. *Post*, even as they are qualified in the decision of *Hooker* v. *Pierce*, and to give to the recording act a construction, if less literal, more in harmony with its intention and purpose, and one which, affording to innocent purchasers a protection against latent equities, makes it sufficient to search the records against each party who has had title or interest in the premises during the time that the record shows such title or interest to remain in him, instead of requiring a search

to be made against each such person from the time of the acquiring of such title or interest, to the date of the search, although the record may show that he has conveyed away his interest fifty years prior to the time of the search. This decision shows a departure from the technical rule laid down in *Jackson* v. *Post*, and gives a security to real estate titles, which, under that decision and the views expressed in the cases which have followed it, they were very far from possessing, the general practice of the profession being to search the record.against persons who held title to the property only during the time the record showed such title to remain in each, thus leaving the title uninvestigated in particulars in which there was certainly a *possibility* of defects being afterward shown. — [REP.