Traphagen v. Hand.

ALBERT D. TRAPHAGEN et al.

v.

EDWARD S. HAND et al.

The defendant in a judgment which had been paid off but not canceled of record, *bona fide* negotiated a sale of it as a valid judgment to a *bona fide* purchaser for value, without notice, to whom the plaintiff in the judgment assigned it, covenanting that the whole of the money for which it was recovered was due. The holders of a subsequent judgment brought suit to compel cancellation of the judgment, on the ground that it was paid off when the assignment was made.—*Held*, that equity would not aid them, the purchasers having bought in good faith, for value and without notice.

Bill for relief. On final hearing on pleadings and proofs.

*Mr. J. Whitehead*, for complainants.

*Mr. J. R. Emery*, for defendants Lyon and McCabe.

THE CHANCELLOR.

The complainants are Albert D. Traphagen and the Orange National Bank, judgment creditors of Israel D. Condit and Israel D. Condit, Jr., under judgments recovered by them respectively in the supreme court of this state against the Condits. Mr. Traphagen's judgment is for $4,141.75, damages and costs, and was recovered November 19th, 1874, and the bank's judgment was recovered July 27th, 1874, and is for $3,828.88, damages and costs. The object of the suit is to compel the cancellation of two judgments, one recovered against Israel D. Condit and others, May 4th, 1874, by William McDonald for $2,596.65, damages and costs, and assigned to Thomas B. Peddie, and the other recovered by Samuel W. Torrey, May 6th, 1874, against Israel D. Condit and Israel D. Condit, Jr., for $7,074.41, damages and costs, and a mortgage for $3,000, given by Israel D. Condit and wife June 17th, 1874, to Andrew J. Wood, all which judgments and mort-

gage are apparent liens prior to the judgments of the complainants on the property (or some part of it) of Israel D. Condit, levied on under the executions on the last-mentioned judgments. The controversy is as to the Torrey judgment, which was assigned by Torrey to Lewis J. Lyons, June 22d, 1875, and by Lyons (for the consideration of $7,610.71, as expressed in the deed) to McCabe, January 31st, 1878. The complainants, by the bill, allege and insist that that judgment was fraudulently assigned to Lyons; that when the assignment was made the judgment had been paid off, and that Lyons paid nothing for the assignment. They allege that the judgment was paid off by mortgages given to Torrey by Francis R. Condit and wife on property in the state of New York, which were accepted by Torrey, May 13th, 1875, in full satisfaction of the judgment, and they also insist that, therefore, the assignment was fraudulent, and that Lyons, when he took the assignment, knew that the judgment had been paid off.

The facts appear to be that on the last-mentioned day, May 13th, 1875, Torrey did accept the mortgages in full satisfaction of his demands against Israel D. Condit, including those on which the judgment was founded, although a final settlement was not made between them until October 6th, 1876. The judgment was never canceled of record. Shortly before the assignment, Israel D. Condit, who owed Lyons's firm (said by the bill to have consisted of Lyons and McCabe) over $2,000, told Lyons that he could control the judgment and make it the first encumbrance on part of the property on which it was a lien, and proposed to Lyons that the latter should take an assignment of it, to which Lyons agreed. It was agreed between them that the consideration of the assignment should be the amount of the judgment, and out of the consideration Lyons was to deduct the amount of the indebtedness of Condit to his firm, and pay the balance in money; $1,000 of that balance were to go to Peddie as consideration of a release for the benefit of the Torrey judgment of part of the property on which Peddie's judgment was a lien. That judgment was, as before stated, prior to the Torrey judgment. Lyons took the assignment and paid the money ac-

cordingly. $1,000 of the money were paid to Peddie for the release, which, though made to Condit, was not delivered to him, but to Lyons's attorney, who held it for him until the assignment to McCabe, and then held it for the latter. The assignment was made by Torrey at the request of Condit. He appears to have been unwilling to make it until he was assured by counsel that he might safely do so, and only consented on receiving from Condit an instrument of writing to protect him against loss or embarrassment by reason thereof. The instrument recited that he held the judgment as security for an indebtedness of $20,000 due him from Condit, for which he held the before-mentioned mortgages, and that he was willing to transfer and relinquish the security of the judgment by assigning the judgment to such person as Condit might direct, to enable the latter to raise money thereon. Condit thereby declared that, in case the judgment should thereafter be enforced and collected out of his property, it should not affect Torrey's claim under his mortgages, but that Torrey should hold them and the bonds secured thereby as security for the principal sum of $20,000 and the interest thereon; he having received no consideration for the assignment of the judgment; and that it was understood that Condit's indebtedness to Torrey was to be in no way affected by the assignment.

The consideration expressed in the deed of assignment was only $1, but Torrey, by the assignment, not only sold and assigned the judgment to Lyons, but covenanted with him that there was due on it the sum of $7,031.13 damages, and $43.38 costs of suit, and that he would not collect or receive that money or any part thereof, nor release or discharge the judgment, but would own and allow all lawful proceedings thereon, Lyons saving him harmless from any costs in the premises. Lyons appears not to have known or suspected (and the same is true of McCabe also) that the judgment had in fact been paid, or that it was not a valid and subsisting security for its full amount. He employed an attorney to attend to the assignment, and placed the money he was to pay in the attorney's hands, in order that he might pay it over for him when he should be satisfied that it might safely be done. The attorney appears to have taken pains

to satisfy himself as to the title of the property, subject to the judgment and the amount of encumbrance thereon prior to the judgment. He presumed, as he well might, that the attorney who appeared to be acting for the assignor, was indeed acting for and on behalf of Torrey. And he had no suspicion whatever that the judgment was not a valid and subsisting lien, or that it or any part of it had been paid or satisfied, but believed it was a *bona fide* valid security, and that all the money was due on it. Condit, indeed, was acting in the matter, and the money that was paid by Lyons, except the $1,000 paid to Peddie for the release, went to him; but Torrey also was acting therein, and it undoubtedly was understood by Lyons and his attorney, that by some arrangement or understanding between Condit and Torrey, the consideration which Lyons was to pay for the assignment was, with the exception just mentioned, to go to Condit. But there does not seem to have been any intention on the part either of Torrey or Condit to defraud Lyons or any one else in the matter. As before stated, Torrey acted cautiously and on the advice of counsel, and Condit swears that he thought he had a perfect right to do what he was doing, and that he believed the judgment to be a subsisting valid lien at that time. It would seem, from the recital of the instrument given by Condit to Torrey for his protection, that it was understood between them that notwithstanding Torrey had agreed on the 13th of May, 1875 (the assignment was made on the 22d of June following) to accept the mortgages in satisfaction of (among others) the claims on which the judgment was based, he still held the judgment also as security for the indebtedness of Condit to him. And it appears, from Torrey's testimony, that there was no settlement between them until October of the next year. It appears that on the 6th of the last-mentioned month, he paid Condit the balance due on the settlement which Torrey says was made then, and on that day gave him an order on his, Torrey's, attorney in the judgment for the notes, checks, &c., against Condit in their hands, which they had received from Torrey in March, 1874, for collection. Lyons was a *bona fide* purchaser without notice, for value, not only to the extent of the money he paid, $1,000 of which

went as before stated, to release the property on which the complainant's judgments were a lien, from the encumbrance of Peddie's judgment, which was a lien prior to their judgment and to Torrey's judgment, but also as to the rest of the consideration, which was the discharge of an existing debt. *Uhler* v. *Semple, 5 C. E. Gr. 288, 293.* It is a general and thoroughly established rule that a purchaser *bona fide* for valuable consideration without notice of any preceding claim at law or in equity, will not be prevented by the court of chancery from availing himself of any advantage which he has acquired. *2 Spence's Eq. Jur. 733.* Or, as Mr. Foublanque expresses it, such a one "shall not be annoyed in equity." *Fonbl. book 2 p. 147.*

The rule is elsewhere thus expressed : "A purchaser *bona fide* and for a valuable consideration, without notice of any defect in his title at the time he made his purchase, may buy or get in any encumbrance (although it is satisfied) ; and if he can defend himself at law by it, his adversary shall never be aided in equity for setting it aside, for equity will not disarm a purchaser but assist him ; and precedents of this nature are very ancient and numerous, viz., where the court hath refused to give any assistance against a purchaser, either to an heir, or to a vendor, or to the fatherless, or to creditors, or even to one purchaser against another." *2 Sugd. on Vend. 738.* Said Lord Loughborough in *Jerrard* v. *Saunders, 2 Ves. Jr. 454,* "Against such a purchaser this court will not take the least step imaginable." "A purchaser without notice for a valuable consideration," said Lord Northington in *Stanhope* v. *Earl Verney, 2 Eden 81,* "is a bar to the jurisdiction of this court, and it is of no consequence when the legal advantage was acquired, if the purchase was made and the money paid without notice." In *Wallwyn* v. *Lee, 9 Ves. 24,* which was a suit by a tenant in tail in possession under a marriage settlement for discovery and delivery of title deeds, Lord Eldon allowed a plea of mortgage by the tenant for life, alleging himself to be seized in fee and in possession of the premises and deeds as apparent owner, on the rule that equity gives no assistance against a purchaser for valuable consideration without notice. In *Joyce* v. *De Moleyns, 2 J. & L. 374,* the rule was

Traphagen *v.* Hand.

applied by Lord Chancellor Sugden. There, the heir-at-law obtained possession of title deeds relating to impropriate tithes, of which his second brother under the will of their father was tenant for life, and deposited them with bankers by way of equitable mortgage, to secure a sum of money which they advanced him. On a bill filed by the administrator of a bond-creditor of the father for the administration of his estate, and praying that the bankers might be decreed to deliver up the deeds, the bankers insisted that they were purchasers for valuable consideration without notice of the will, or of the title of any persons claiming thereunder, or of the demand of the plaintiff, and submitted that the bill should be dismissed, or that the plaintiff should redeem them. The bill was dismissed, with costs. The chancellor said there was no question as to the right of the persons entitled to the tithes to recover at law, but that he apprehended that the defence of a purchaser for value without notice was a shield as well against a legal as an equitable title. In *Jones* v. *Powles, 3 M. & K. 581,* where the equitable title of the purchaser, who had obtained the legal title by assignment to him of a satisfied mortgage, depended on a forged will, he was held to be entitled to the protection of the court. And the purchaser of personal property is entitled to the benefit of the rule. In *Dawson* v. *Prince, 2 De G. & J. 41,* it was applied where a married woman sued for a bill of exchange which had been remitted to her in respect of her separate estate. It was payable to her order. Her husband got possession of it without her knowledge, forged her name on the back of it, then endorsed his own name on it, and gave the bill to the defendant to get it discounted. The defendant got it discounted, but to do so was obliged to endorse it himself. He paid the proceeds to the husband. The acceptor, in consequence of a notice from the complainant, refused to pay the holder, and the defendant was compelled to pay. The suit was brought to establish the complainant's title, and to restrain the defendant from suing the acceptor at law. The other cases illustrating this salutary and characteristic rule of equity are collected in the annotations to the case of *Basset* v. *Nosworthy, 2 Lead. Cas. in Eq. 1.* In *Wilson* v. *Hill, 2 Beas. 143,* it was

held that the assignee for value and without notice of a mort-gage illegal and void in the hands of the mortgagee, might enforce it. The rule is observed with strictness, and is clearly applicable to the case in hand. The complainants have had recourse to this court because they are without remedy at law. Their claim is based on their equity to have the judgment declared satisfied, because it was paid, although it was never canceled of record, and was kept on foot by the parties to it after it was in fact satisfied. They would have a clear right to the relief as against Condit and Torrey, but the equity of McCabe, by reason of the fact that Lyons, his assignor, was (as in fact he himself is) a *bona fide* holder of the judgment without notice and for valuable consideration, is superior to theirs. "No one," says Mr. Jeremy, "can have a greater claim or equity to an estate than a *bona fide* purchaser for a valuable consideration with-out notice of any defect in his title; and it seems also clear that no one can have equal equity with him but a person similarly circumstanced." *Jer. Eq. Jur. 283.*

But, further, the equity of the complainants to have the Torrey judgment canceled was, when Lyons took his assignment, and also when McCabe took his, a latent one, and while the assignee of a chose in action takes it subject to the equities existing be-tween the parties to it, he is not bound by latent equities in favor of third parties, of which he had no notice when he took his assignment. *Reilly* v. *Mayer, 1 Beas. 55; Lavalette* v. *Thomp-son, 2 Beas. 274; Murray* v. *Lylburn, 2 Johns. Ch. 441; Free-man on Judg.* § *428; Story on Bills* § *220; Starr* v. *Haskins, 11 C. E. Gr. 414.* Here, the judgment debtor and judgment creditor together conspired to sell the judgment to Lyons. They concealed from him the fact that it had been paid. Both repre-sented to him that it was a valid security of which no part had been paid. This, Condit did by words and Torrey by his con-duct as well as by his assignment, and his solemn covenant therein with Lyons that the whole amount was due. What diligence can protect a purchaser against such a combination?" What greater diligence could be required or could be exercised than that which Lyons exercised in this case? There was noth-

Traphagen v. Hand.

ing to put him on inquiry; and what inquiry could he make? of whom inquire? Condit swears that he thought the judgment was still a valid subsisting security, and Torrey assigned it to Lyons as such. Though a judgment be in fact paid off but not canceled of record, yet if the judgment debtor causes it to be assigned to one who gives value for it, it will be a valid and subsisting security as between them. A mortgage may have been paid, yet on a valuable consideration it may be kept alive for other purposes when the rights of creditors and third persons have not intervened. *Robinson* v. *Urquhart, 1 Beas. 515; Hoy* v. *Bramhall, 4 C. E. Gr. 563.* In *Crafts* v. *Wilkinson, 4 Ad. & El. (N. S.) 74,* a judgment was entered for £500 to secure the payment of about that sum, with interest. The debt was subsequently increased to £1,070, and it was agreed between the parties that the judgment should stand as security for the increased debt. Afterwards the defendant sold land which was subject to the judgment, to one who had notice of the agreement. He applied for a rule directing that the judgment be canceled on payment of the amount thereof into court, but the motion was denied. In *Nichols* v. *Dissler, 2 Vr. 461,* it was held that the title of a *bona fide* purchaser for value, under a judicial sale, the judgment and order for sale remaining in full force and unsatisfied of record, cannot be defeated by parol proof of payment of the debt by the defendant in execution to the plaintiff before the sale. That was an action to recover possession of land which the defendant claimed under a sale to him under a judgment in attachment. The plaintiff offered to prove by parol that the judgment had been satisfied by the payment of a judgment recovered in New York for the same debt for which the judgment in attachment was recovered, and the payment of the costs of the attachment proceedings. The evidence was overruled as incompetent, and the ruling was sustained. Said Chancellor Green, in delivering the judgment of the court of errors and appeals in the cause: " But it is now claimed that the mere payment of the debt or a release given by the plaintiff to the defendant is *ipso facto* a satisfaction and discharge of the record and an abrogation of the power of the court, although the judg-

ment and the order for sale remain upon the record unsatisfied and in full force. And this offer is made by the defendant in the execution to cancel the record, by the verbal proof of himself and his attorney of a settlement between the parties in New York, and the satisfaction of a judgment more than nineteen years after the transaction occurred, for the defeat of the title of a *bona fide* purchaser for valuable consideration, without notice, upon the faith of that record more than nineteen years ago. In my judgment the rules of law and the sound dictates of public policy alike forbid it." The judgments of the complainants existed at the time the assignment to Lyons was made. The complainants gave no credit to Condit, based on the knowledge or supposition that the Torrey judgment had been paid; for when their judgments were recovered that judgment had not been paid. Nor did they give any credit or extension of time after the delivery and acceptance of the mortgages by Torrey, founded on the knowledge or belief that his judgment was satisfied. One thousand dollars of the money paid by Lyons went to remove so much of an encumbrance prior to that of their judgments. The bill prays that Lyons and McCabe, or one of them, may be decreed to cancel the judgment, if it appears to have been wholly paid, or if paid only partially, that it may be decreed to be a lien only for so much as is unpaid. Obviously, if the proof were never so clear that the judgment had been fully paid previously to the assignment to Lyons, a decree for cancellation could not be granted; for the judgment, if set aside as against the complainants, would still be valid against Condit. And the court ought not, under the circumstances, to aid the complainants by subordinating the lien of the judgment to the lien of their judgments. As to the $1,000 paid to Peddie for the release, it obviously would be highly inequitable to do so, and as to the rest of the consideration of the assignment as well as that part of it, equity will not deprive McCabe of the advantage he has. The question, it may be added, is not whether the judgment can be enforced by McCabe (though it undoubtedly can be), but whether equity will aid the complainants in their effort to deprive him of the benefit of the judgment. And it is

Reed v. Cumberland Ins. Co.

enough to say that he is a *bona fide* purchaser for a valuable consideration and without notice, and against such a one this court will not lift a finger. The bill will be dismissed as to Lyons and McCabe, with costs.