# CASES

### ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF ILLINOIS.

---

## LAZARUS SILVERMAN

*v.*

## JOHN ROW BULLOCK *et al.*

*Filed at Ottawa September 25, 1880—Rehearing denied March Term, 1881*

1. POWER OF ATTORNEY—*sale on credit under.* Where a power of attorney for the sale of land is general, containing no limitation upon the attorney, and no directions as to whether the sale shall be for cash or on time, it will be in the discretion of the attorney to make sales according to the usual custom in such matters, and a sale on credit, made in good faith, by such attorney will be upheld.

2. NOTICE—*to principal, of his attorney's act, by recording.* Where an agent under a power of attorney sells and conveys lots of his principal on time, taking mortgages and trust deeds on the same to secure the purchase money, which he places upon record, the principal will be held to have notice of what the record of the mortgages and trust deeds discloses, and he can not be heard to deny notice of the fact that his agent has sold on credit and taken notes payable to himself.

3. ASSIGNMENT—*of notes—cuts out defence.* Where an agent under a power of attorney. fraudulently sells and conveys lots of his principal to a third person, who gives his notes for the price, payable to the agent, secured by mortgage on the property sold, and the payee transfers the notes to an innocent purchaser, for value, the original owner of the land can not have the sale of the lots set aside as against the rights of the assignee of the notes, and the latter will have the right to enforce the security for their payment.

4. SAME—*of mortgage—subject to what equities.* The assignee of a mortgage takes it subject only to the equities existing in favor of the mortgagor against the assignor, and not subject to latent equities in favor of

| 98 | 11 |
| 135 | 669 |
| 98 | 11 |
| 147 | 302 |
| 98 | 11 |
| 44a | 521 |
| 98 | 11 |
| 160 | 202 |
| 98 | 11 |
| 65a | 98 |
| 98 | 11 |
| 170 | 368 |
| 171 | 493 |
| 98 | 11 |
| 78a | 186 |
| 98 | 11 |
| 179 | 605 |
| 98 | 11 |
| 191 | 4255 |
| 98a | 4203 |
| 98 | 11 |
| 100a | 4227 |

third persons, in the subject involved in the assignment, of which he had no notice.

5. Although a sale of property may be fraudulent, and subject to be set aside by the original owner defrauded, yet where the purchaser gives his notes for the purchase money, secured by mortgage on the property, which is recorded, he will not be allowed to allege that his purchase was a mere accommodation for the agent selling, and hence not binding on him, as against an innocent assignee of the notes for value.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Messrs. L. & P. TRUMBULL, for the appellant:

Silverman, as the assignee of the notes, for value, before maturity, and without actual notice of any fraud, or of any claim to the notes by any other than his assignor, has a good title against the world. *Comstock* v. *Hannah*, 76 Ill. 531; *Goodman* v. *Simonds*, 20 How. 343; *Goodman* v. *Harvey*, 4 Ald. & Ell. 870; *Magee* v. *Badger et al.* 34 N. Y. 247; *Welch* v. *Sage*, 47 id. 143; *Seybel* v. *National Currency Bank*, 54 id. 288; *Chapman* v. *Rose*, 56 id. 137; 1 Pars. on Notes, etc., 258; *Murray* v. *Gardner*, 2 Wall. 110.

An assignee of notes is not bound or affected by any recitals in the mortgage or deeds of trust given to secure them. *Minel* v. *Read*, 26 Ala. 726.

Parties negotiating for negotiable instruments are not bound to take notice of public records. 1 Daniel on Nego. Instru. 654 sec. 800.

"The note and mortgage are inseparable; the former, as essential, the latter, as an incident. An assignment of the note carries the mortgage with it." *Carpenter* v. *Longan*, 16 Wall. 274.

If a mortgage is given to secure a note, and the note is transferred, before maturity, to a *bona fide* assignee, he takes the benefit of the mortgage as he does the note, and clear of any equities between the original parties. 1 Daniel on Nego.

Inst. 685, sec. 834; Hilliard on Mort. sec. 526, 49; *Taylor* v. *Page,* 6 Allen, 86; *Carpenter* v. *Longan,* 16 Wall. 273.

The assignee of notes takes the mortgage subject to all the equities of the mortgagor, but not to the latent equities of a third person. *Mott* v. *Clark,* 9 Pa. St. 399; *Petillion* v. *Noble,* 73 Ill. 567; *Bryant* v. *Vix,* 83 id. 11; *Walker* v. *Dement,* 42 id. 278.

It is a familiar principle, that " when a loss is to be suffered through the misconduct of an agent it should be borne by those who put it in his power to do the wrong rather than by a stranger." *County of Macon* v. *Shores,* 7 Otto, 279.

Mr. W. S. SEARLS, for the appellees:

The power of attorney was recorded March 5, 1873; from that date Silverman is chargeable with notice that Bullock was the owner of the several lots embraced in the trust deeds, now held by him, he resorting, as he does, to the land for payment. In support of this position, see *Chicago, Rock Island & Pacific R. R. Co.* v. *Kennedy et al.* 70 Ill. 350; *McConnel* v. *Reed,* 4 Scam. 117; *Merrick* v. *Wallace,* 19 Ill. 486; *Morrison* v. *Kelly,* 22 id. 610; *Morris et al.* v. *Hogle et al.* 37 id. 150; *Rupert et al.* v. *Mark,* 15 id. 540; *Shannon et al.* v. *Hall et al.* 72 id. 354; *Hall* v. *Shannon et al.* 85 id. 473.

Silverman being notified of the power of attorney, was bound to examine its scope, and look to the authority of Runyan under it. Story on Agency, (7th ed.) sec. 72; *Peabody* v. *Heard,* 46 Ill. 242; *Cooley* v. *Willard et al.* 34 id. 68; *Reynolds* v. *Ferree et al.* 86 id. 570; Commentaries on Agency and Agents, Wharton, sec. 227.

Silverman is bound by such construction of the powers contained in the instrument, as the law has applied to them; that construction is a strict one, by which the authority of the agent is never extended beyond that which is given in terms, or is absolutely necessary for carrying the authority so given into effect. *Bissell* v. *Terry et al.* 69 Ill. 184; *Chase*

v. *Dana,* 44 id. 262 ; *Thornton* v. *Boyden,* 31 id. 200; Story's Agency, secs. 68, 69, 126.

If a special agent exceeds the special and limited authority conferred on him, the principal is not bound by his acts unless he has held the agent out as possessing a more enlarged authority. *Hartford Fire Ins. Co.* v. *Wilcox,* 57 Ill. 180; Story's Agency, sec. 126.

It is not supposable that Silverman purchased the notes and trust deeds without inquiring into the standing of the maker, or that he neglected to examine the records as to the title. That position, it appears to me, can not be successfully assumed, and at the same time give Silverman the credit of using the care of an ordinary business man in the transaction; that care he was bound to use. *Russell* v. *Hadduck,* 3 Gilman, 233; *Sturges' Sons* v. *Met. Nat. Bank of N. Y.* 49 Ill. 220; *McConnel* v. *Hodson et al.* 2 Gilman, 640.

When Silverman received these several trust deeds, he took them subject to all of appellees' rights in the real estate described in each trust deed, and when he seeks, as he now does, to enforce payment of the notes by sale of that real estate, appellees may insist upon all their legal and equitable rights in the property, as a defence to his proceeding, and a court of equity will look into all the circumstances, and will not enforce the trust deeds in the hands of the assignee, if they ought not to be enforced in the hands of the assignor. *Olds* v. *Cummings et al.* 31 Ill. 188; *Walker* v. *Dement,* 42 id. 272; *Bryant et al.* v. *Vix,* 83 id. 11; *Fortier* v. *Darst,* 31 id. 212.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The facts in this case, susceptible of direct proof, are so well established as to admit of no disagreement. The subject of controversy is that with which the law charges the parties interested with notice.

Prior to November, 1872, complainant, with defendant Runyan, and Harlow P. Smith, were the owners of a tract

of land adjoining the city of Chicago.   Subsequently the owners platted it into lots and blocks, designating it as "Central Park Second Addition to Chicago."   A division of the lots between the owners was made, and it is as to a portion of the lots set apart to complainant Bullock, this litigation concerns.

On the 7th day of November, 1872, complainant and his wife gave defendant Runyan a power of attorney to sell and convey the lots that had been set apart to complainant in the division.   The power was general.   No specific directions were given as to the terms upon which sales should be made. Under the power given, Runyan made numerous sales of lots between March 4, 1873, and May 31, 1875, and conveyed the property by deed, as the attorney in fact of complainant and his wife.   Some of the sales appear to have been partly for cash and partly on time, and in the latter case the purchase money was secured, either by mortgage or deed of trust on the property.   Among others, sales were made to defendants Story, Flanagan and Douglas, each purchaser securing a portion or all of the purchase money of the lots conveyed to him, by mortgage or trust deed.   The notes taken for the lots sold were either made payable to Runyan or to persons selected by him, and who afterwards assigned the same to him.   A portion of the notes given by Flanagan, Story and Douglas, respectively, were afterwards sold and assigned to defendant Silverman, and are the notes involved in this controversy.   All of the notes assigned to Silverman were purchased by him in good faith, for a valuable consideration, and before maturity, except one of Flanagan's, and as to that note, he inquired of the maker, and was told it was all right and would be paid.

In the summer of 1876 Runyan failed and left the State. On learning the fact of Runyan's embarrassment, complainant undertook to discover the condition of his property, and on obtaining the requisite information, the original bill in this case was filed, in which was set forth the various sales of

lots made by Runyan under the power of attorney given to him, and charging that the same were made without the knowledge or consent of complainant; that they were fraudulent and void; that Runyan had no authority to make sales of lots on a credit and to take notes and trust deeds running to himself or to a third party for the purchase money, and charges the several purchasers of lots, and of notes given for the same, with notice of his ownership and interest therein. Both the purchasers and the parties holding notes were made defendants, and a decree was asked that all sales be set aside as fraudulent, and in case any such sales should be found to be valid, and any of the purchase money agreed to be paid remained unpaid, that the parties owing it should be decreed to pay it to complainant. The bill contains other matters in relation to moneys due from Runyan to complainant, but as the present litigants are not interested in that branch of the case, it will not be necessary to state them.

After making his answer to the original bill, Silverman filed a cross-bill, by which he seeks a foreclosure of the mortgages or trust deeds by which the notes assigned to him by Runyan are secured. On the hearing the circuit court decreed relief, substantially as asked in the original bill, affirming some of the sales, but giving to complainant the benefit of all the purchase money, and dismissed Silverman's cross-bill. That decree was affirmed in the Appellate Court, and now Silverman brings the case to this court on his appeal.

The case has been most elaborately argued, but it seems to us the controlling questions present no great difficulty in their solution. The sales of lots, both to Story and Flanagan, were made in good faith, and were so understood by them, and there is, and can be no reason why the purchasers are not entitled to the benefit of their contracts. As we have seen, the power of attorney from complainant and his wife to Runyan, was as broad and comprehensive as it could well be made. It was to sell and convey the property, and

to do all things necessary to be done, as fully as the owner could do were he personally present. No limitation was placed on the power of the attorney acting on behalf of the owner, and no directions were given as to how the sales should be made, whether for cash or on time. The power being general it would seem to be in the discretion of the attorney to make sales of the property according to the usual custom in such matters, whatever that might be.

It may be true, as alleged, that complainant had no actual knowledge that his attorney in fact was making sales of his property on time, and taking notes in his own name for the purchase money. He seems to have trusted the matter of making sales of his property to his agent and attorney, without giving it the slightest personal attention. But as the mortgages and trust deeds, containing definite descriptions of the property sold, and the notes taken to secure the purchase money, were placed on record by the attorney in fact of complainant, such act may be justly regarded as the act of complainant, and it is not, therefore, unreasonable to hold that he had notice of what the record made by his own agent disclosed. The conveyance to Flanagan was made on the 18th day of March, 1873, and to Story on the 13th day of June, 1873, and, although the deeds were on record, yet complainant made no objections to the sales to either of them until 1876, after his agent and attorney had misappropriated the funds and left the State. There could then be no equitable ground on which the sales could be set aside. Clearly the purchasers are entitled to the benefit of their contracts The decree declaring these sales valid was warranted by the facts.

As respects the sales of lots to Douglas, they were, no doubt, colorable and for the accommodation of Runyan. Were the rights of no third parties involved, all the sales to him might be set aside at the suit of complainant as a fraud upon him. But as to third parties, who may have acquired, in good faith, an interest in his notes, or the property itself, Douglas will not be permitted to allege his purchases were a

mere accommodation to Runyan, and, hence, not binding on him. That would enable him to perpetrate a fraud on third persons who could not know the sales to him were not in good faith. On the record it appeared to all the world to be absolute sales, and, as to parties dealing with the land or the securities made by him, he is concluded by what the record he has himself made shows. The land in his hands, as well as his personal responsibility, is bound for the payment of his outstanding notes in the hands of an innocent assignee for value. His notes, under our statute, were negotiable, and, as against him, carried with them the mortgage pledge for their payment. A court of chancery will not listen to him when he asserts a transaction, fair on the record, was secretly colorable for accommodation of his grantor. His undertaking made it possible for his grantor to sell his notes to innocent parties, and to such persons he will be as absolutely bound for their payment as if the sales to him had been made in good faith. As to all the notes themselves, involved in this litigation, there can be no question Silverman is entitled to collect them of the makers, not only those bought before maturity, but the one over due when he took it, as he first inquired of the maker concerning it, and was assured it would be paid.

The only seeming difficulty in the case is, whether Silverman is entitled to the security afforded by the mortgages or trust deeds by which the notes in his hands are secured, and to have the same foreclosed for his benefit. As against the makers of the notes there can be no question made. Both Story and Flanagan assert the validity of their contracts, and are ready to pay, to whomsoever is entitled to receive it, the balance of the purchase money. As we have seen, Douglas, as against an innocent assignee of his notes before maturity, for value, can make no defence, either as to the payment of his notes or as to the security pledged for their payment. Nothing is urged against these propositions, but the argument is made in favor of the equitable rights of com-

plainant. It is said that when Silverman took to himself an assignment of the several mortgages or trust deeds, he took them subject to all the rights of complainant in the real estate embraced in them. In support of this proposition the principle declared in *Olds* v. *Cummings*, 31 Ill. 188, and other cases in this court, is invoked, but, on a close analysis, it will be seen the cases cited do not sustain the position assumed by counsel. The doctrine is well understood, that an assignee of a mortgage takes it subject to the same equities it was subject to in the hands of the assignor. It is because a mortgage or deed of trust is not assignable, either at common law or under our statute, as is commercial paper. By the common law, choses in action are not assignable so as to vest the absolute title in the assignee; nor has our statute enlarged the common law in this respect. The principle of *Olds* v. *Cummings* is, that the assignee of a mortgage takes it subject to all equities existing in favor of the mortgagor. The reason assigned for the rule is, that it is the duty of a purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid; but it was said in that case, he should not be required to inquire of the whole world to see if some one has not a latent equity which might be interfered with by the purchase of the mortgage, as, for instance, a *cestui que trust.* The cases cited by the court in support of the decision in *Olds* v. *Cummings*, are *Murray* v. *Lylburn*, 2 Johns. Ch. 44, *Mott* v. *Clark*, 9 Pa. St. 399, *Pryor* v. *Wood*, 31 id. 142, and *Westfall* v. *Jones*, 20 Barb. 10, and it will be found, on examination, that all of them, except *Westfall* v. *Jones*, hold, as Chancellor KENT expressed it, that the assignee of a chose in action takes it subject to "the equities residing in the original obligor or debtor, and not an equity residing in some third person against the assignor." The case of *Westfall* v. *Jones* is silent on this question, and was cited, no doubt, for another purpose, viz: to show the assignee of a

chose in action takes it subject to all the equities existing against it in the hands of the assignor, and that the term equities, as used in that connection, means *defences.*

Although this is the first case that has arisen in this State for the application of the doctrine, we must regard it as settled by the cases cited, that the assignee of a mortgage takes it subject only to equities existing in favor of the mortgagor, as against the assignor, and not subject to latent equities in favor of third persons in the subject involved in the assign-ment, of which he had no notice. The rule in *Olds* v. *Cummings* is a reasonable one, and can readily be observed. Persons dealing in such securities can, without difficulty, inquire of the makers if any defences exist against them, but more than that it is not practicable to do. Of course, it would not be possible to discover, even by the utmost diligence, all persons that might have equitable rights in the subject matter of the assignment, and the adoption of a rule that would let in latent equities to prevail against the assignee, would be to ensnare dealers in such securities.

Applying this rule to the case in hand, we find the mortgagors have no equities or defences that can prevail against the assignee of the several mortgages or trust deeds made by them, and as the equities of third persons in the property covered by the mortgages must be postponed to the rights of the assignee, it follows that whatever equities complainant may have in the próperty embraced in these mortgages or trust deeds are inferior to and must be postponed to the superior equities of the assignee, Silverman.

The judgment of the Appellate Court will be reversed, and the cause remanded with directions to that court to reverse the decree of the circuit court and remand the cause for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

Mr. JUSTICE SHELDON dissenting.