FRED. TIMMERMAN v. RICHARD HOWELL ET AL.

1. ACTION UPON THE ASSIGNOR'S GUARANTY OF THE COLLECTIBILITY OF THE NOTE.

   The assignee of a negotiable promissory note and of a mortgage securing the payment thereof cannot maintain a personal action upon the assignor's guaranty of the collectibility of the note, made contemporaneously with the assignment, without first resorting to the mortgage security.

2. ASSIGNEE OF A NEGOTIABLE NOTE AND MORTGAGE TAKES THE MORTGAGE SUBJECT TO PRIOR EQUITIES.

   Such assignee, although acquiring title in good faith and before maturity, takes the mortgage subject to such prior equities in the mortgaged premises as might have been successfully asserted against his assignor.

3. EFFECT OF MORTGAGE IN THE HANDS OF AN ASSIGNOR, HE BEING A MORTGAGEE WITH EXPRESS NOTICE.

In the hands of such assignor, he being a mortgagee with express notice, the mortgage was subject; (1) to the equitable lien of a prior mortgage duly executed and recorded, and intended by the parties thereto to be a mort age upon the same premises, although by mutual mistake the premises were therein incorrectly described, and (2) to the right of a purchaser at a sale pursuant to a decree of foreclosure founded upon such erroneous mortgage to be subrogated to the rights of all the parties to the suit in which such decree was rendered.

4. A MORTGAGE WAIVES HOMESTEAD EXEMPTIONS IN PROPERTY INTENDED TO BE CONVEYED.

Although the premises thus sold are the family homestead of the debtor defendant neither the head of the family nor the wife is entitled to an allowance out of the proceeds in lieu of homestead as against a debt which both attempted to secure by a mortgage upon such homestead, duly executed, acknowledged and recorded, the legal validity of such mortgage lien being defeated only by a mutual mistake in the description of the premises.

APPEAL from the court of Common Pleas of Shelby county.

At the beginning of the transactions out of which this suit arises, Howell was the owner in fee of the forty acres of land described in the petition, and in the actual possession thereof, and he was not the owner of any other real estate. On the 16th day of October, 1879, Howell executed to one Balser Hagelberger his promissory note for $800; and to secure the payment thereof Howell and his wife executed to Hagelberger their mortgage upon said premises. On the 17th day of July, 1880, Howell executed to the defendant Collins his note for $320, and on the same day Howell and his wife attempted to execute to Collins a mortgage upon said premises to secure the payment thereof; but the instrument executed for that purpose did not contain a description of the lands so owned by Howell, but did contain a clear and definite description of lands which Howell never owned, and the instrument so drawn was delivered by Howell and accepted by Collins in the belief that it correctly described and conveyed the premises which Howell owned, and with the full intention on the part of both parties that it should convey the same.

On the 28th day of December, 1882, Howell and wife, to secure the payment of their note of that date for $200, executed to Thieman & May their mortgage upon the premises so owned by Howell, conveying the same by a correct description. These mortgages were recorded in the order of their execution.

On the 30th day of August, 1884, Collins brought suit in the common pleas court of Shelby county against Howell, Mrs. Howell, Hagelberger and Thieman & May, *describing the premises as in his mortgage*, and praying for a personal judgment against Howell upon the note so executed, and for a sale of the premises to satisfy his claim. Process was served upon the defendants, and proceedings in due form were had, resulting in a personal judgment against Howell in favor of Collins upon the note so executed to him, and an order for the sale of the premises described in the petition in that case. No decree was taken upon the answer and cross-petition of Hagelberger, or on that of Thieman & May. On the decree in favor of Collins the premises were sold, the description in the petition being followed in the order of sale and in the sheriff's advertisement. At the sheriff's sale the lands were sold to Timmerman, the plaintiff here, and, upon confirmation, the sheriff executed to him a deed following the description in the petition in that suit. Neither Timmerman nor any of the parties to that suit had any knowledge of the erroneous description of the premises in the Collins mortgage. The appraisers estimated the lands actually owned by Howell, and the purchaser, the officer, and all parties to the suit acted upon the belief that those lands were brought to sale. The purchaser paid the sum of his bid to the sheriff, and by order of the court it was distributed according to the supposed rights of the parties. The motion of Collins to confirm the sale and distribute the proceeds was filed January 7, 1885, and the order was made on the 10th day of the same month.

The amounts due Collins, Hagelberger, and Thieman & May were all paid by the sheriff prior to the 24th day of January, and on that day the surplus was paid to Howell, receipts being given upon the sheriff's cash book by all of said parties.

On the 29th day of February, 1885, Howell and wife, they being still in possession, executed a mortgage upon the lands so owned by him to the defendants Hastings and Hilbrant, to secure his negotiable promissory note of that date for the sum of $1,500, payable in one year, which mortgage was left for record upon the same day.

The defendants Hastings and Hilbrant were present when Timmerman bought the lands at the sheriff's sale. They had knowledge of the error in the description of the lands, and of Timmerman's belief that he was purchasing the lands actually owned by Howell. But they did not by word or act encourage his mistake, or induce him to make the purchase.

On the 2d and 3d days of March following the sale, Howell, at the instance of Hastings and Hilbrant, procured the cancellation of the Hagelberger and Thieman & May mortgages by indorsements upon the original mortgages, and the cancellation of the Hagelberger mortgage was then entered of record.

On the 4th of March Hastings and Hilbrant procured from the recorder a certificate, showing that the lands of Howell were unincumbered except by the Thieman & May mortgage, and upon the same day sold and assigned their note and mortgage of February 26th to the defendant Fritsch at his place of business in an adjoining county, Fritsch paying therefor a full consideration, and purchasing in good faith without knowledge of any of the mistakes in the proceedings referred to, or that such proceedings were had. By their written endorsement upon the note Hastings and Hilbrant jointly and severally guaranteed that it was collectible, and the assignment of the mortgage was by the following endorsement thereon signed by them : "For value received we hereby assign the within mortgage to Francis Fritsch or his assigns." The recorder's certificate was exhibited to Fritsch, and he purchased the note and mortgage, relying upon the premises and the condition of the title as shown, as well as upon the financial responsibility of the guarantors. Hastings and Hilbrant are financially able to respond to their liability as guarantors.

The mortgage of February 26 was executed upon a full consideration, being principally a prior indebtedness of Howell to Hastings and Hilbrant, but partly money and choses in action delivered by them to Howell on the day of the execution of the mortgage, but the precise proportions of these do not appear.

After the 4th of March, Hagelberger entered upon the record of his mortgage a revocation of the cancellation thereof and an assignment to Timmerman.

On the 7th of March, 1885, Timmerman filed his petition in the court of common pleas, claiming to be subrogated to the rights of all the parties to the suit in which said mistakes intervened ; praying that the order of confirmation and distribution in that case be set aside ; that the lands owned by Howell be sold, and that out of the proceeds of sale the sum paid by him to the sheriff be repaid, and that he have such other relief as the facts might warrant.

In his answer and cross-petition Fritsch asserts a lien by virtue of the mortgage so assigned to him, and interposing no objection to the sale of the lands, prays that if they be sold, the proceeds of sale to the extent of his lien be paid to him to the exclusion of all others. The premises were again sold by the sheriff to Timmerman, and in its order distributing the proceeds of said sale, the court of common pleas determined the relative rights of Timmerman and Fritsch, and the cause is here tried on appeal from that order.

Howell and wife were in the possession of said premises when this suit was begun ; were *bona fide* residents of Shelby county, Ohio, and were not then, nor are they now, the owners of any other homestead. By their answer here filed they claim the allowance to them of $500 in lieu of homestead as against the lien of the judgment so rendered in favor of Collins.

At the time of purchasing the mortgage so executed to Hastings and Hilbrant, Fritsch had express notice of the Thieman & May mortgage, but had no notice of any other lien on said premises.

SHAUCK, J.

We do not deem it necessary to determine whether the remedy sought by the petition in this case is in all respects consistent with the theory urged by plaintiff's counsel or not. If a re-sale of the premises was unnecessary, it was made pursuant to the prayer of the petition, and with the consent of the only defendant who now asserts an interest in the subject of the controversy.

The fact that Hastings and Hilbrant are financially able to respond to their liability to Fritsch on their guaranty that the note is collectible, is pressed upon our attention by counsel for the plaintiff as affording a solution of the case favorable to him. But this must not be confounded with a case in which one of two lienholders has other security. Fritsch has no security of the debt other than the land in question. Aside from this, his only resource is the personal liability of Hastings and Hilbrant, and that is to be determined by the contract which they have made. It is well settled that one who holds a guaranty of the collectibility only of a claim, must exhaust all prior resources before proceeding upon the guaranty. Within this rule he is required to have resort to a mortgage which secures the payment of the claim, when, as here, the mortgage is assigned with the claim. Brandt on Sur. & Guar., sec. 83; Barman v. Carhart, 10 Mich., 338.

If, therefore, there is by virtue of this mortgage, a valid lien on the premises in question for payment of the money due Fritsch, his failure to exhaust that lien would be a defense to his action against Hastings and Hilbrant on their guaranty.

That the plaintiff is entitled to be subrogated to the rights of the parties to the original suit, is not seriously questioned. To that extent the claim of the plaintiff is supported by secs. 5402 and 5411 Rev. Stat.

A purschaser at a sale under an order for the sale of mortgaged premises, is invested with the mortgagee's interest in the land; and so far as the land is concerned, he is subrogated to all the rights of the mortgagee. Frische v. Kramer's Lessee, 16 O., 125. Among the rights as to this land to which Timmerman was subrogated by his purchase, was the equitable right of Collins to have his mortgage so reformed as that it should apply to the land which Howell owned, and thus to give effect to the intention of all the parties to that instrument.

But counsel for the defendants insist that the plaintiff is not entitled to assert this right as against the later mortgagees, Hastings and Hilbrant. It is a recognized limitation upon the relief here sought, that subrogation will not be decreed to the prejudice of such intervening rights of third persons as have been innocently acquired. Subrogation is an equitable doctrine, and it will not be so applied as to produce inequitable results. This limitation upon the general doctrine is recognized in the statute referred to, which provides that the purchaser at a sale of property on execution, whose title is defective by reason of a defect in the proceedings, may be subrogated to the rights of the creditor against the debtor, and to the extent of the money applied for his benefit, shall have a lien upon the property sold, as against all persons, except *bona fide purchasers without notice.*

Did Hastings and Hilbrant acquire their mortgage under such circumstances, so as to entitle it, in their hands, to protection against the equitable demand of the plaintiff? The evidence affords no warrant for the claim that they were guilty of active fraud. At the time of the plaintiff's purchase at the sheriff's sale, they were, so far as the evidence discloses, entire strangers to him. They did not lead him to believe that the premises owned by the mortgagor were described in the proceedings, nor did they in any way induce him to make the purchase. But we are satisfied from the evidence, that they were present at the sale, and that they then

had express notice of the mistake in the description of the premises in Collins' mortgage and the proceedings founded thereon. They knew that he made his bid and accepted the sheriff's deed, in the belief that the proceedings had relation to the premises owned by the mortgagor, and that by said deed he acquired a valid title to said premises. When they subsequently accepted their mortgage, they knew that the purchase price paid by the plaintiff upon such belief had, by the order of distribution, been applied to the discharge of the costs, taxes, and the three prior mortgages, and that the receipts upon the sheriff's cash book were in consideration of money so paid on distribution, and not of payments made by the debtor.

Counsel for defendants insist that this express notice does not defeat the priority of right acquired by the later mortgage, executed and recorded according to the requirements of the statute; and as authority for that conclusion they cite, Bloom v. Noggle, 4 O. S., 45, 53; Erwin v. Shuey, 8 O. S., 510; Van Thorniley v. Peters, 26 O. S., 471, and Building Association v. Clark, 43 O. S., 427.

In Bloom v. Noggle, *supra*, it is determined, that a contract in writing to execute a mortgage, does not create an equity paramount to the rights of creditors under a subsequent assignment, although the assignment be taken with knowledge of the contract. In Erwin v. Shuey, it is determined that an instrument intended for a mortgage, but defective because not under seal, creates no lien in favor of the intended mortgagee as against an assignee under a general assignment subsequently made for the benefit of creditors, although the assignee had full notice of the mortgage. In Van Thorniley v. Peters, it is held that a mortgage defectively executed, because attested by but one witness, when reformed, will not affect the lien of a judgment rendered between the dates of the execution and the reformation of the mortgage. These cases are all determined with reference to the registry act. The object of that act is to put an end to all such controversies as to the date of mortgage liens, as arise from conflicting evidence of express notice, and to provide for the taking effect of such mortgages only upon compliance with the provisions of the act.

Delivery for record is indispensable to the lien, and a due execution of the mortgage according to the terms of the statute is indispensable to the record. If the recorder in fact records an instrument that is defectively executed, his unauthorized act imparts to it no validity. In this case there was no defect in the execution of the Collins mortgage. The cases cited do not decide that a subsequent purchaser is not bound by express notice of a mistake in the substantive parts of a prior mortgage that is properly executed and recorded. Nor does the reasoning of the court in those cases lead, or even tend to such conclusion.

It is not denied that the principles which govern courts of equity in the correction of instruments, where mutual mistake has intervened, would require the correction of the description in the Collins mortgage in a suit against the mortgagor for that purpose. To the granting of such relief between the parties to the instrument the registry act offers no impediment. Nor does it take such a case out of the general rule, that a purchaser takes subject to prior rights of which he has express notice. That a mistake of this character may be reformed, not only as against the mortgagor, but as against a purchaser having notice of the mistake, is distinctly held in Strang v. Beach, et al., 11 O. S., 283.

Upon the general principles and the authority referred to, it seems clear that if Hastings and Hilbrant were still the owners of the mortgage executed to them, it would be subordinate to the equities of the plaintiff.

Is the position of Fritsch stronger than that of his assignors? It clearly appears that he purchased the note and mortgage for an adequate price, and that he had no actual notice of the plaintiff's equity, or of any of the facts out of which it arises. That he is a *bona fide* purchaser of the note and of the mortgage securing it, is clear. Does this fact to the extent of the mortgage entitle him to the protection which the law affords to *bona fide* purchasers? No

interest has been conveyed to him by any instrument executed conformably to the provisions of the act regulating the execution of deeds and mortgages. By an assignment endorsed thereon, he has acquired the mortgage executed by Howell and wife to Hastings and Hilbrant. Does this assignment relieve the instrument of the infirmities to which it was subject in the hands of the mortgagees?

In Bailey v. Smith, 14 O, S., 396, it is determined, that a mortgage in the hands of a *bona fide* assignee thereof is subject to the same defenses *by the mortgagor* that he might have made against the mortgagee. The mortgage under consideration was executed by Howell to Hastings and Hilbrant upon a full consideration and without fraud. It is entirely clear that, so far as Howell is concerned, the instrument was valid at its inception, and that he could have made no defense against it in a suit brought by the mortgagees. Baily v. Smith does not go to the extent of deciding that a *bona fide* assignee of a mortgage takes subject to the antecedent equities of strangers to the mortgage. It affirms the well established doctrine, that mortgages are not vested with the legal incidents of negotiable paper, and, in the application of this doctrine, that the assignee of a mortgage takes subject to defenses whether he has notice of them or not. The case determines nothing as to the equities of strangers to the mortgage, although Ranney, J., in the case says: "If a mortgage is assigned, either expressly or by legal implication, the assignee takes only the interest which his assignor had in the instrument—acquires but an equity, and, upon the long established doctrine in courts of equity, is bound to submit to the assertion of the prior equitable rights of third persons."

In Jones on Mortgages, sec. 475, the rule is stated as follows: "An assignee of a bond and mortgage without notice of any equities affecting it, takes it subject to a prior unrecorded mortgage, or *to any other equity of which the mortgagee had actual notice.* In Davis v. Austin, 1 Vesey, jun., 247, Lord Chancellor Thurlow says: "a purchaser of a chose in action must always abide by the case of the person from whom he buys."

The author cites in support of the statement of the rule just quoted from Jones on Mortgages the case of Conover v. Van Meter, 18 N. J. Eq., 482, where the Chancellor states the rule thus broadly: "The assignee of a mortgage takes it subject to all equities between the assignor and other parties, whether these equities be latent or not."

To be rightly understood, these judicial observations must be limited to the facts of the cases in which they are made.

In the latter and more carefully considered case of Vredenburg v. Burnet, 31 N. J. Eq., 229, the Vice-Chancellor says: "The established doctrine of this court is, that the assignee of a mortgage takes it subject to all the defenses which the mortgagor, or those who have succeeded to his rights, may urge against it; but free from latent or secret equities created by the mortgagee in favor of third parties."

In Murray v. Lylburn, 2 Johns. Ch., 441, Chancellor Kent quotes the rule that the assignee of a chose in action takes it subject to the same equity to which it was subject in the hands of the assignor, and adds "but this rule is generally understood to mean the equity residing in the original obligor or debtor, and not an equity residing in some third person against the debtor."

In Silverman v. Bullock, 98 Ill., 11, the court approves the limitation placed upon the rule by Chancellor Kent, and holds the rule to be "that the assignee of a mortgage takes it subject only to the equities existing in favor of the mortgagor against the assignor, and not subject to latent equities in favor of third persons in the subject involved in the assignment, of which he had no notice;" and it is there said that the term *equities*, as used in the statement of the rule under consideration, means *defenses*.

The scope and effect of this limitation are made clear by the reason assigned for it in the two cases last cited. That reason is, that it is practicable to require

such assignee to inquire of the mortgagor as to any defenses which he may have against the instrument, but impracticable to require him to make such inquiry concerning secret equities in favor of persons of whose connection with the transaction he is not advised.

In the earlier case of Olds v. Cummings, 31 Ill., 188, the defense of usury was permitted to be made by the mortgagor although the mortgage, with the note which it secured, had passed into the hands of an innocent assignee. The point decided was in principle identical with that in Bailey v. Smith, that an assignee of a mortgage takes it subject to such defenses as the mortgagor might have made as against the mortgagee, whether he has notice of such defenses or not. But the court there limit and justify the rule in the following language: ''There are many cases in which the assignees have been protected against latent equities of third persons, whose rights, or even names, do not appear on the face of the mortgage. And the reason is, that it is the duty of the purchaser of a mortgage to inquire of the mortgagor if there be any reason why it should not be paid; but he should not be required to inquire of the whole world to see if some one has not a latent equity which might be interfered with by his purchase of the mortgage.''

These cases seem to agree in the conclusion, that the assignee of a mortgage takes it subject only to such defenses as the mortgagor, or those who succeed to his rights, might have made against the instrument had it remained in the hands of the mortgagee. They recognize and amplify the doctrine laid down by Chancellor Kent in Murray v. Lylburn. But the doctrine of that case was vigorously criticized by Denio, J., speaking for a majority of the court, in Bush v. Lathrop, 22 N. Y., 535, where it was held that the assignee of a mortgage takes it subject to all the equities of third persons which inhere in the instrument itself. And in the application of that doctrine the rights of an assignee without notice were held to be subordinate to the rights of a previous assignor, who had made an assignment absolute in form, though it was in fact, as security for the payment of a sum of money much less than the amount of the mortgage assigned. This case has been followed in a number of the more recent cases in New York, and the authority of Murray v. Lylburn may now be regarded as completely overthrown in that state.

In the cases of English v. Waples, 13 Ia., 57, and Sims v. Hammond, 33 Ia., 368, it is held that where a mortgagee, having express notice of a prior unrecorded mortgage upon the same lands, assigns his mortgage to one who has no knowledge of such prior mortgage, the assignee nevertheless takes subject to the prior mortgage. The preference which in Bush v. Lathrop was accorded to the holder of a latent equity inhering in the mortgage assigned, is in these cases accorded to the holder of a latent equity in the premises which are the subject of the mortgage.

The cases thus determined are:

First—Those in which the equities, or—more correctly speaking—the defenses of the mortgagor have been asserted against the instrument in the hands of an assignee without notice.

Second—Those in which the controversy involved the equitable rights of such assignee and the latent equities of third persons in the mortgage assigned.

Third—Those in which the court was called upon to determine the relative rights of such assignee and the holder of a latent equity in the premises which were the subject of the mortgage.

With reference to cases of the first class the law may now be regarded as well settled. But few cases have held that such defense may not be made after assignment, and their authority has been distinctly repudiated in Bailey v. Smith, *supra.*

No effort appears to have been made to distinguish between cases of the second and third classes named, if, indeed, such distinction be possible. With reference to cases falling within the second class, the authorities are not in accord;

but the decided weight of the later cases is in favor of the holder of the prior equity. The case under consideration falls within the third class, and, so far as we have observed, the authorities pertinent to this class uniformly require the assignee of the mortgage to submit to the assertion of the older equity. This uniformity of decision, it is true, may be accidental merely, since no principle is suggested which would require the rights of one possessed of a latent equity in the lands, to be regarded with less favor than those of one having a latent equity in the mortgage assigned.

The views advanced in the opinion in Bailey v. Smith, *supra*, give precedence to the prior equity in all the classes of cases referred to. Admitting that those views exceeded the requirements of the case, and ignored the distinction between equities and defenses so clearly taken in other cases, they are nevertheless the views of an able judge, advanced as the ground of decision in that case, and with the apparent concurrence of all the judges. The court of last resort in this state has not, so far as we have observed, shown any disposition to restrict those views to the precise question there determined. On the contrary, the case is cited in Ranney v. Hardy, 43 O. S., 157, as authority for giving effect to a prior equitable interest in the premises as against the assignee of a mortgage thereon, though the substantial ground of decision in that case is, that actual possession of the premises by one having an equitable interest therein, requires all others to take notice of his interest.

These cases give controlling effect to the rules, that protection against undisclosed equities is extended only to those who by their purchases acquire legal titles; that by the assignment of a mortgage the assignee acquires an equitable interest merely, and that between the holders of mere equities he is first in right who is first in time. It is due to their authority that we recognize the superiority of the equitable rights of the plaintiff.

But we are not prepared to say, that if authority were absent a more satisfactory conclusion could not be reached from a consideration of the intrinsic merits of these rival equities. Courts of high authority have repeatedly declared, that the rule which awards superiority of right to him who is first in time, is the rule of last resort, and that it will not be applied to a case in which the junior equity is superior to the elder in point of intrinsic merit. Here it resulted from the negligence of the plaintiff at the time of his purchase, that the legal title and apparent ownership of the lands remained in Howell, and that he was enabled by the assistance of his mortgagees to induce Fritsch to purchase a security, whose invalidity was not disclosed by an examination of the record, and could not be discovered by any practicable inquiry. But it might have been urged with equal force in Bush v. Lathrop, *supra*, that it was due to the negligence of the prevailing party that an absolute assignment of the mortgage vested the assignee with apparent authority to make an unrestricted sale to one who in turn purchased from him; and in English v. Waples and Sims v. Hammond, *supra*, that the negligence of the first mortgagee left it in the power of the mortgagor to put into the market what was apparently the first lien upon the premises, whereby an innocent purchaser thereof suffered loss. These suggestions, if made in those cases, did not prevail.

The debtor, Howell, and his wife claim that the provisions of sec. 5440, Rev. Stat., entitle them to an allowance in lieu of homestead as against the Collins judgment. Counsel for Fritsch insist that the Collins judgment does not preclude such allowance, but that the mortgage owned by their client does, and that the amount of that judgment, it being less than five hundred dollars, i payable to him without regard to other questions presented. These claims depend alike upon the right of the Howells to the exemption. So far as the legal, statutory lien of the Collins judgment is concerned, their right to the exemption is clear. But the Collins judgment is founded on the note of July 17 1880, whose payment Howell and wife attempted to secure by a mortgag,i upon these premises. The facts show an undoubted right in Collins to have hes

mortgage reformed as against both Howell and his wife, so that, giving effect to the intention of all the parties, it should constitute a valid mortgage lien upon these premises. Against that right, to which the plaintiff is subrogated, the exemption cannot be allowed.

Judgment for plaintiff.

S. L. Wicoff and H. H. Wilson, for plaintiff.

T. W. Brotherton, W. D. Davies, and West, Brown & West, for defendants.