KIRK HIMROD

v.

JAMES BOLTON, IMPLEADED, ETC.

*Trust Deed—Foreclosure—Forged Notes.*

1. Where a trust deed is properly in evidence in a given case, upon the theory that the signature to it was written by a person named, it is proper to compare that signature with those upon notes, they purporting to have been signed by such person. .

2. Where an admittedly genuine document is produced, a *prima*

Himrod v. Bolton.

*facie* presumption arises that the signature thereto was written by the person by whom it is admitted the instrument was executed. If it is desired to show that the contrary is the case, evidence should be introduced tending to so show.

3. The assignment of secured notes carries with it an equitable assignment of the security.

4. The assignee of a chose in action does not take it subject to equities existing in favor of third persons, of which he had no notice.

5. The general principle that one can not convey a better title than he has, does not operate to estop an innocent purchaser of mortgage notes from setting up the fact that other notes, purporting to be the notes secured by the instrument in question and previously sold to another, were forged. The delivery of a trust deed alone does not operate as an assignment of the mortgage. The incumbrance follows the notes.

6. As between persons having only equitable interests, if the equities are equal, he whose equity was first obtained has the better right.

7. If one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who puts trust and confidence in the deceiver, should be the loser.

[Opinion filed June 8, 1892.]

In error to the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding.

Messrs. Miller & Starr, for plaintiff in error.

Mr. N. M. Jones, for defendant in error.

Waterman, P. J. The decree here brought into review was one of foreclosure and sale. Plaintiff in error, Himrod, filed his bill to foreclose a mortgage trust deed made by George D. Gilman to William Loeb, made to secure Gilman's two notes for $4,500 each, Himrod claiming to be the holder and owner of the notes and indebtedness secured thereby. Pending this suit, defendant in error James Bolton, filed his petition to intervene and be made defendant, which was ordered, and he filed his answer and cross-bill, in which he alleged that the notes held by the original complainant, Himrod, were not the notes secured by said trust deed; but that he (Bolton) was the holder of the notes so secured, and

prayed for a foreclosure in his favor. Issues being made up, the case was referred to a master in chancery to take the evidence and report the same with his conclusions.

The evidence showed this state of facts:

Before October 1, 1888, one Frank E. Brady went to Warren Springer to negotiate a loan. The title to the property in question having in the meantime been conveyed to one Gilman, and this trust deed, dated September 18, 1888, taken back to secure the purchase money, afterward, on October 2, 1888, Springer took Brady's collateral note for $3,500, reciting the deposit of two notes of Gilman for $4,500 cash, secured by said trust deed as collateral security, and also received two notes purporting to be made by Gilman, and the original trust deed, securing the same as collateral, and loaned Brady thereon $3,500. On October 5th, three days later, Brady went to defendant in error Bolton, and showed him two other notes of George D. Gilman, such as are described in the said trust deed, and Bolton loaned Brady $5,000 thereon, and gave him the money on October 15th. The two Gilman notes deposited with Springer on October 2d, to secure the loan from him, and those deposited later with Bolton to secure the loan from him, were not the same, but were different notes, but were like in terms and both sets answered the description in the trust deed. Springer made his loan and got his notes first, and Bolton some days later, and Springer received with his notes and placed on record the original trust deed. Bolton did not receive or see the trust deed, but was told by Brady that it was in the recorder's office for record, and he did not get it after it was recorded, but it went into Springer's hands, and was never in Bolton's possession. A few months later, Springer, under the power in the collateral note of Brady, sold the collateral deposited and named therein (the two Gilman notes and trust deed) to Kirk Himrod, the plaintiff in error, before their maturity, for $4,000, which Himrod paid therefor.

Neither party was able to get or produce the evidence of Gilman or Brady. The evidence as to the alleged forgery consisted principally of the testimony of experts, who from

microscopical and other examinations declared that the
signatures to the notes assigned by Brady to Springer and
now held by Himrod, were not written by the same person
who wrote the signature " Geo. D. Gilman" to the trust
deed.

Plaintiff in error objects to the conclusion of the court
that the notes he holds are forgeries; first, because he says
that in this State the genuineness of a signature can not be
determined by comparing it with another signature ad-
mitted to be genuine. And second, because, he says, that
there was no proof that Gilman actually wrote his name
upon the trust deed; that for aught that appears he may
have authorized some other person to write his name for
him, and in his presence his name may have been so written
by such other person, and so the document, the deed, may
be a genuine one without Gilman having in his own person
written his name to it.

The trust deed made by Gilman was properly in evidence
in this case; that being the case, upon the theory that the
signature to it was written by Gilman, it was proper to com-
pare that signature with those upon the various notes pur-
porting to be made by the same Gilman. Brobston v.
Cahill, 64 Ill. 356.

The trust deed having been set up by plaintiff in error in
his bill as a genuine instrument, and having been by him
introduced in evidence, we think that the signature " Geo.
D. Gilman " thereon must be presumed to have been written
by him. Courts can not in this country and this age fail to
take notice of the fact that the majority of men can and do,
as a usual thing, by their own hands, write their names to
the documents they execute; and when an admittedly gen-
uine document is produced, a *prima facie* presumption arises
that the signature thereto was written by the person
by whom it is admitted the instrument was executed. If
plaintiff in error desired to have it appear that the signature
" Geo. D. Gilman" on the trust deed was not written by
George D. Gilman, he should have introduced evidence
tending so to show. Cannady v. The People, 17 Ill. 158;

Wharton on Evidence, Sec. 1320. The conclusion of the chancellor that the notes held by appellant are forgeries was, therefore, warranted by the evidence.

Brady having sold the notes he transferred to Springer as genuine instruments, he became estopped to deny that they are such; this being his position, the question arises as to the position of Bolton, who afterward purchased from Brady the genuine notes. Bolton acquired his title in complete ignorance of the fraud that had been perpetrated by Brady; in no sense can he be said to be chargeable with notice of the fraud perpetrated by Brady, nor do we understand counsel for plaintiff in error as insisting upon this, so much as upon the position that Brady, being estopped to deny that the mortgage had been assigned to Springer, in other words, as between Brady and Springer an assignment by estoppel having taken place, therefore Brady could not thereafter assign to Bolton the security, which, as against Springer, he had no right to. It is necessary in considering this matter to keep clearly in mind just what the transaction between Brady and Springer was.

The assignment of secured notes carries with it an equitable assignment of the security; but there was no assignment of *the secured* notes to Springer; to him there was only an assignment of forged notes. Such an assignment by itself carried nothing with it; but the representation of genuineness made by Brady estopped him from denying that the notes were genuine, and as against him operated as an assignment of the security.

The contention of plaintiff in error in this regard is based largely upon the fact that it was after this that Brady assigned the genuine notes to Bolton; but if Brady, *before* his transaction with Springer, had assigned as he did to Bolton, he, Brady, by his assignment and representations to Springer, would have been estopped to deny the truth of what he had said to him as much as he is now.

The genuine notes having been transferred to Bolton without notice of anything previously done by Brady, Bolton became the equitable owner of the security, unless the

assignee of a chose in action takes it subject to equities, of which he had no notice, existing in favor of third persons. We regard this question as settled by the case of Silverman v. Bullock, 98 Ill. 11–20, in which is approved the declaration of Chancellor Kent in Murray v. Lylburn, 2 Johns. Ch. 441, that " the assignee of a chose in action takes it subject to the equities residing in the original obligor or debtor, and not an equity residing in some third person against the assignor." If " A " purchases from " B " an account against " C," " A " takes it subject to whatever defense " C " may have, but not subject to whatever claim thereon " D " may have. As expressed by Chancellor Kent, " The assignee can always go to the debtor and ascertain what claims he may have against the chose in action, but he may not be able with the utmost diligence to ascertain the latent equity of some third person against the obligee."

Counsel urge that no one can convey a better title than he has, and say that Brady having represented to Springer that the mortgage had been assigned to him, and being thereby estopped to deny this, the estoppel is carried over to Bolton upon the principle that no one can convey a better title than he has.

The principle contended for is, as a general proposition, quite correct; but Brady did not transfer to Springer a complete equitable title to, or claim upon the mortgage; that could only be done by an assignment of the notes which it secured; these he actually transferred to Bolton; he merely represented to Springer that he had transferred them to him; the delivery of the trust deed to Springer was not an assignment of the mortgage. Jones on Mortgage, Sec. 806, 457; Bowers v. Johnson, 49 N. Y. 432; Warden v. Adams, 15 Mass. 233.

So long as Brady retained possession of the notes which the trust deed secured, he retained the power to assign the mortgage; the incumbrance followed the notes it was given to secure; it did not follow the person to whose order the notes were made. It is because Bolton received these notes without notice of any dealing with, or right of

Springer, that he is entitled to the benefit of the security, not because he received them from Brady.

Plaintiff in error, insisting that he was the first assignee of the secured notes, as, against Brady, he by estoppel must be held to be, urges that his assignment must prevail over the later one to Bolton.

The rule *prior in tempore portior in jure* has been said to be the feeblest of equities.    Rice v. Rice, 1 Drew, 73.

While we are not inclined to thus characterize so important a principle, it must be borne in mind that it is more correct to say that as between persons having only equitable interests, if the equities are equal, he whose equity was first obtained has the better right. Pomeroy's Eq. Juris., Sec. 414.

We do not regard the equities in this case as being equal. Springer and Bolton each acted in good faith; Springer, or rather his assignee, Himrod, relies for his equity upon the representations of Brady; Bolton has not only the representations of Brady, but also the fact that he obtained and holds the notes which the trust deed secures.

Had Gilman appeared and answered the bills filed in this cause, it is apparent that he would have been entitled to have had the proceeds of the security applied to the payment of the genuine notes, those he made, those held by Bolton.

Gilman does not appear to have been a party to the fraud, and while service has been had upon him by publication and he is in default, yet as there is neither proof nor charge that he was a party to the iniquity of Brady, the court can not be oblivious to the fact that if the security is exhausted by a payment of the notes held by appellant, Gilman will still remain liable for the full amount of the notes he made, which are held by Bolton.

If plaintiff in error and Bolton should each bring an action at law against Gilman upon the notes they respectively hold, it is manifest that Bolton could recover and that plaintiff in error could not; and if this trust deed is now to be foreclosed for the benefit of plaintiff in error, it will be foreclosed not upon or to pay the notes it was made to

secure, but upon forged paper, and for the purpose only of making good the representations of Brady; a devotion of the proceeds of a mortgage sale to the payment of the notes held by Himrod may save him harmless from the untruths and crimes of Brady, but it will not pay Gilman's notes.

The principle that if one of two innocent persons must suffer by a deceit, it is more consonant to reason that he who puts trust and confidence in the deceiver should be the loser, is applicable here. Carpenter v. Longan, 16 Wallace, 271.

Springer, without going to Gilman and asking him if the notes were genuine, put confidence in the representations of Brady; these representations turn out to be false. Bolton does not rely alone upon the representations made to him, which turned out to be true, but upon the possession of the genuine notes.

Springer it is, and his assignee, Himrod, who, having put trust and confidence in the representations of Brady, have been deceived. Bolton acquired the thing which Springer merely thought he had obtained, viz., the genuine notes. The decree of the Circuit Court will be affirmed.

*Decree affirmed.*